Louise COMPTON, Plaintiff-Appellant,

v.

The TENNESSEE DEPARTMENT OF
PUBLIC WELFARE et al.,
Defendants-Appellees.

No. 75–1314.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1975.

Decided March 24, 1976.

Jerrold L. Becker, Legal Clinic, David M. Kirstein, Knoxville, Tenn., for plaintiff-appellant.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., Charles N. Stedman, Knoxville, Tenn., R. A. Ashley, Jr., Atty. Gen. of Tennessee, Bart C. Durham III, Nashville, Tenn., for defendants-appellees.

Catherine M. Bishop, Alvin Hirshen, National Housing and Economic Development Law Project, Robert M. Teets, Jr., Food Advocates, Berkeley, Cal., John G. LeVeck, Legal Aid Society of San Joaquin County, Stockton, Cal., David B. Bryson, Cooperative Legal Services Center California Rural Legal Assistance, San Francisco, Cal., for amicus curiae.

Before WEICK, MILLER and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This is an appeal by Louise Compton from a summary judgment entered in the District Court denying declaratory and injunctive relief against the Tennessee Department of Public Welfare and the Secretary of Agriculture. Plaintiff's complaint challenges the validity of a policy of the Department of Agriculture which includes rent subsidy payments in the calculation of income under the Food Stamp Act of 1964 as amended, 7 U.S.C. § 2011 *et seq.*

In a carefully written opinion reported at 386 F.Supp. 944, District Judge Robert L. Taylor held that the policy did not offend the purposes of the Food Stamp Act, was not in excess of the Secretary's granted authority, nor was it repugnant to the Fifth and Fourteenth Amendments. We agree and affirm.

Mrs. Compton, plaintiff-appellant, is a 60-year old woman whose only source of income is $146.00 a month from Social Security and $44.00 a month contributed by her son. Mrs. Compton qualified for residency in the Stonewall Apartments in Knoxville, Tennessee, a rent subsidized housing project under the Department of Housing and Urban Development rent subsidy program, 12 U.S.C. § 1701s. That program authorizes the Secretary of Housing and Urban Development to make annual payments to a housing owner on behalf of qualified tenants. Mrs. Compton made a payment of $55.00 a month toward the rent of her apartment and HUD contributed a rent supplement on her behalf of $127.00 a month.

Until August 20, 1974, Mrs. Compton was determined to be eligible to purchase $82.00

worth of food stamps for $29.00. On that date, however, Mrs. Compton was advised that she was disqualified from purchasing any further food stamps since her monthly income was in excess of the food stamp program's schedule of need. Her disqualification resulted from the inclusion in her income of the $127.00 per month HUD rent supplement payment.

The Food Stamp Act of 1964 provides for the issuance of food stamp coupons to eligible households. A household pays for stamps at a reduced rate of the coupon's face value, this fractional rate being dependent upon the household size and net monthly income. As income increases, the corresponding cost of the food stamps also increases. The determination of eligible households is vested pursuant to 7 U.S.C. § 2014(b) in the Secretary of the Department of Agriculture who

"shall establish uniform national standards of eligibility for participation by households in the food stamp program . . . The standards established by the Secretary, at a minimum, shall prescribe the amounts of household income and other financial resources, including both liquid and nonliquid assets, to be used as criteria of eligibility . . ."

The foregoing language was added to the Act by the 1971 amendments: P.L. 91–671, § 4, January 11, 1971, 84 Stat. 2049; to correct the prior statutory scheme of relying on varying state standards to determine eligibility. General authority is also accorded the Secretary by § 2013(c) which provides:

"The Secretary shall issue such regulations, not inconsistent with this Act, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program."

Under the above statutory provisions, the Secretary has promulgated regulations codified in 7 C.F.R. § 271.3; "Household eligi-

bility". Specifically, 7 C.F.R. § 271.3(c)(1)(i) provides the definition of income as including, *inter alia:*

(f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;

\* \* \* \* \* \*

(h) Payments, except those for medical costs, made on behalf of the household by a person other than a member of the household;

Section 271.3(c)(1)(ii) then provides an inclusive list of what is *not* to be considered income. Specifically, subsection (c) states:

"Any gain or benefit which is not in money . . ."

After gross income is determined, Section 271.3(c)(1)(iii) affords various deductions to arrive at the final net income figure to be used in determining eligibility for food stamps.

■ The regulations themselves do not specifically make reference to the inclusion of HUD's rent supplement payments as income. Instead the authority for the action of the Tennessee Department of Public Welfare, in determining that Mrs. Compton was disqualified from receiving food stamps, derives from the Department of Agriculture's interpretation (binding on the state agency) that such payments, being in cash and being made on behalf of Mrs. Compton by a person other than a household member, must be counted as income under the provisions of 7 C.F.R. § 271.-3(c)(1)(i)(h). This interpretation is likewise consistent with the language in an unpublished "Food Stamp Certification Handbook" issued and provided to state agencies as guidance in carrying out the provisions of the regulations.[1] In that handbook under "Vendor Payments", it is provided:

"Payments in money, except those for medical costs, made on behalf of the

---

1. Amicus on appeal contends that the Department of Agriculture's instruction is void since, contrary to the provisions of 5 U.S.C. § 552(a), it was not published in the Federal Register. However, this argument was not raised in the district court and accordingly will not be heard

on appeal. *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037, 1040 (1941); *Schneider v. Electric Auto-Lite Co.,* 456 F.2d 366, 375 (6th Cir. 1972). Although the court in *Rodway v. United States Dept. of Agriculture,* 168 U.S.App.D.C. 387, 514 F.2d 809

household by a person other than a member of the household. Such payments may be made by private or government sources, for instance, housing allowances from Housing and Urban Development (HUD) would be an example of a government vendor payment. To qualify as a vendor payment, there must be an identifiable payment on the household's behalf, the major benefit from which accrues to the household rather than the payer. If there is no identifiable payment or if the major benefit from such payment accrues to the payer and not to the household, such benefit shall be considered income in kind and not income to the household." FNS Instruction 732–1, § 2262.10 "Vendor Payments"

Appellant argues that the Secretary's policy of including rent supplement payments in the definition of income violates the Food Stamp Act because the Congressional purpose was to alleviate hunger and malnutrition and that the inclusion of rent supplements as vendor payments achieves the opposite result since it increases cost that low-income families must bear in order to purchase food stamps.

■■ An initial question is the validity of the Secretary's regulation which includes in the definition of income payments made on behalf of the household by a person other than a member of the household, 7 C.F.R. § 271.3(c)(1)(i)(h). We adhere to the test in *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318, 329 (1973):

"Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' "

The purpose of the Food Stamp Act is to grant needy people the means of securing a nutritious diet. 7 U.S.C. § 2011. The Act grants to the Secretary the power to establish the standards of eligibility, which criteria at a minimum shall prescribe the amounts of household income, 7 U.S.C. § 2014(b). We believe that it is reasonable for the Secretary in defining income to include those payments which, although are not paid directly to a member of the household, do result in a readily ascertainable economic benefit. A distinction between money paid to a recipient who then pays a vendor for goods and the case where the vendor is paid directly for the goods charged by the intended recipient would exalt form over substance.

Having concluded that the "vendor payment" regulation is a reasonable promulgation of the Secretary to effectuate the purposes of the Act, the next question is whether the specific application of the regulation to include rent supplement payments is contrary to the purposes of the Act. The authority for rent supplement payments derives from 12 U.S.C. § 1701s(a) which provides that "The Secretary of Housing and Urban Development . . . is authorized to make, and contract to make, annual payments to a 'housing owner' on behalf of 'qualified tenants' . . .". The maximum amount that the Secretary of HUD is authorized to pay to a qualified "housing owner" is that amount which does "not exceed the amount by which the fair market rental for such unit exceeds one-fourth of the tenant's income . . ." 12 U.S.C. § 1701s(d). The term "housing owner" is defined in § 1701s(b) to mean basically private nonprofit corporations and private nonprofit legal entities. The rent supplement program was designed to allow greater flexibility in helping people with low incomes to obtain standard housing. It was intended that the amount of the federal payment would be reduced as the family income rose and would be discontinued when the income was sufficient to pay the fair market rental. The program would

(1975), noticed on its own motion the apparent failure of the Secretary to comply with procedural requirements of the APA, we note that in

*Rodway* plaintiffs, unlike plaintiff here, were prosecuting their action on behalf of themselves and others similarly situated.

permit a mixture of income levels to live together. U.S.Code Cong. & Admin.News, 1965, Vol. 2, page 2620 (House Report No. 365).

It appears clear to us that rent supplement payments constitute a proper example of vendor payments. Qualified tenants are receiving an economic benefit by the federal government defraying a portion of the fair market rental of apartments. The payments are made directly to the housing owner "on behalf" of the tenant. We do recognize, however, that the Secretary's policy at first impression seems to penalize low-income families with a forced choice between decent housing and food. It is evident though that the policy is not an illusory choice between food and housing, but rather a means of equalization between those whose housing costs are partially defrayed and those families who alone must bear the full burden of housing. The proper allocation of food stamps to a given scale of income is a different question from the equitable construction of the income scale itself. Thus the issue of whether the revised calculation of plaintiff's income affords a nutritious diet is not before this court.

■■■■ The standard of review of the interpretation of an administrative regulation is strict, as noted by the Supreme Court in *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965):

"When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

'Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. . . . [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–414 [65 S.Ct. 1215, 1217, 89 L.Ed. 1700]."

We cannot say that the Secretary's policy of including rent supplement payments in the definition of income for food stamps is plainly erroneous or inconsistent with the vendor payment regulation.

The precise issue before this court was decided adversely to the government in *Anderson v. Butz*, No. S–75–401 (E.D.Cal., Aug. 29, 1975). The district court in holding that the Secretary's policy of including rent supplement payments in the definition of income was contrary to Congressional intent relied on the Ichabod Amendment; P.L. 93–86 § 3(g), Aug. 10, 1973, 87 Stat. 246, which provides:

*Provided,* That such standards shall take into account payments in kind received from an employer by members of a household, if such payments are in lieu of or supplemental to household income: *Provided further,* That such payments in kind shall be limited only to housing provided by such employer to such employee and shall be the actual value of such housing but in no event shall such value be considered to be in excess of the sum of $25.00 per month. 7 U.S.C. § 2014(b).

The court reasoned that the amendment evinced a Congressional intent to limit the inclusion of housing benefits in the definition of income to housing supplied by an employer and then only to a maximum of $25.00 a month. However, a closer reading of the provision illuminates that its scope embraces only *in kind* benefits, and not vendor payments. Thus the effect of the amendment is not a limitation but rather an exception to the prior policy that *no* in kind benefits were includable in income. 7 C.F.R. § 271.3(c)(1)(ii)(c). Without the amendment, the Secretary's regulations would have excluded from income housing supplied in kind from an employer. Thus the district court's observation that the apparent purpose of the amendment was "equalizing the food stamp benefits of a person who receives his earnings entirely in the form of wages [with the] person who actually has the same income but receives part of it in kind rather than in cash" is in support of the result we reach here.

Appellant's second major contention is that the Secretary's policy (and the Tennessee Department of Public Welfare's adherence to that policy) is violative of equal protection and therefore repugnant to the Fifth and Fourteenth Amendments. That class which plaintiff claims is the object of preferential treatment are those individuals who reside in traditional low-rent housing projects under the United States Housing Act of 1937, 42 U.S.C. § 1401 *et seq.* Under that Act, a state, county, municipality or other governmental entity or public body engages in the construction and operation of public housing. The federal government may assist the public housing agency by either making loans to help finance or refinance the development, acquisition or operation of the low-income housing project by such agency, or by making annual contributions to the public housing agency to assist in achieving and maintaining the low-income character of the project. In analyzing the difference between this program and the rent supplement grants made to the private housing owner, the district court found:

The underlying distinction between the programs, which ultimately gives rise to the alleged classification, is the form and method of the federal subsidy. Thus, while the common denominator of both programs is the presence of a direct federal subsidy remitted by H.U.D. to the project owner on behalf of a tenant or group of tenants, because the method and form of the subsidy differs between the two, the monetary value of the benefit accruing to the respective tenants of each program is different. Under the 221(d)(3) rent supplement program the monetary equivalent of the benefit the tenant receives is readily ascertainable and can be realistically determined since a fixed sum is remitted by the Government on behalf of the tenant. In that case, the subsidy realistically reflects the benefit the tenant receives. Affixing a monetary value to the benefit the tenant in the traditionally low-rent project receives, however, is a considerably more

illusive if not impossible task since in his case there is no available yardstick for measuring the benefit received by the tenant with a relatively high degree of accuracy. This difficulty of accurately assessing the tenant's benefit in the case of the traditional low-rent tenant arises from the fact that in his case the Government remits to the public housing authority a lump sum payment which, while ultimately accruing to the benefit of each individual tenant, includes compensation to the authority for costs that are not common to or borne by the project owner under the 221(d)(1) rent supplement program, e. g., administrative costs. Thus, simply dividing the amount of an annual subsidy by the number of apartment units would not necessarily give a realistic monetary value for benefit received by a given occupant. Likewise, because of the nature of the market place, affixing a comparative market value to each low-rent unit would be equally speculative.

In conclusion, the Court is satisfied that on the basis of Mr. Waldron's testimony an accurate and realistic value cannot be placed on the benefit received by tenants living in low-rent projects. In the absence of competent testimony to the contrary, the Court has no basis to conclude that such a valuation is in fact possible.

*Patrick v. Tennessee Department of Public Welfare,* 386 F.Supp. 944, 949–950.

Although there is evidence to support the district court's determination that the value of public housing subsidies is difficult to ascertain in reference to a given tenant, we believe the proper question is the validity of the distinction between vendor payments and in kind benefits. The fact that in a given instance the value of an in kind benefit can be accurately ascertained is the exception that justifies the rule. As noted above, 7 C.F.R. § 271.3(c)(1)(ii)(c) excludes from the definition of income "any gain or benefit which is not in money . . . ." and 7 C.F.R. § 271.3(c)(1)(i)(h) includes

"payments, except for those for medical costs, made on behalf of the household by a person other than a member of a household". Again our task is to determine whether the regulations are reasonably related to the purposes of the enabling legislation. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 359, 93 S.Ct. 1652, 1655, 36 L.Ed.2d 318, 324 (1973). The reason advanced by the Secretary for distinguishing between in kind benefits and vendor payments is the desire to "insure uniformity in the distribution of the stamps to those in need and to prevent inequities which would result if each state appraised and assigned subjective dollar values in services not provided as cash payments." *Patrick v. Tennessee Department of Public Welfare,* 386 F.Supp. 944, 950 (E.D.Tenn. 1974).[2] We agree with the district court that the Secretary's distinction is reasonably related to the purposes of the Act, especially in light of the 1971 amendments which authorized the Secretary to "establish uniform national standards of eligibility". 7 U.S.C. § 2014(b). Also, as our discussion above notes, the enactment of the Ichabod Amendment in 1973 implicitly recognizes the validity of the Secretary's regulation excluding in kind benefits for income.

2. The defendants filed in district court the following statement of the Secretary's policy:

> Under the regulation, "income" includes cash payments to a household or payments made to third persons on behalf of the household by one who is not a member of the household. The latter type of payment—known as a "vendor payment" is defined in section 271.3(c)(1)(i) of the regulations as "payments, except those for medical costs, made on behalf of the household by a person other than a member of the household."
>
> A household may also receive benefits that are neither paid direct to the household in cash nor paid in cash to someone else on behalf of the household. Benefits of this type include donated food, clothing, transportation, free use of a house under certain circumstances, and personal services performed free of charge to the household. Such benefits do not represent cash payments and cannot readily and precisely be valued in money by food stamp certification personnel who would be required to assign such values. Because of the difficulties and uncertainties of placing a precise dollar value on these benefits, and the likelihood of inconsistent or equitable valuations by food stamp certification personnel, the Food and Nutrition Service has followed the policy of generally considering income to be cash payments only, whether such payments are made to or on behalf of a household. The only exception to this policy is an amendment to the Act which requires that the actual value of housing received from an employer, up to a $25 maximum, be considered income. In all other instances, payments-in-kind are not considered income for food stamp program purposes. The plaintiff involved in this litigation receive HUD rent subsidies. The subsidies are paid in cash direct to the housing owner on behalf of the recipient and are easily ascertained by the recipient and by social workers.
>
> This type payment is different from the benefit a recipient receives who resides in Government sponsored public housing. There is no identifiable cash payment made to or on behalf of a recipient and value of the subsidized portion of the rent is not easily ascertainable by anyone.
>
> The policy of the Food and Nutrition Service, as reflected in its regulations and instructions, is that households receiving similar benefits should be treated alike for program purposes. Households who receive benefits by payments made direct to them are treated no differently than households who receive payments made to third persons for the benefit of the recipient. It has been determined that it would not be equitable to consider the former payment "income" but not the latter.
>
> A second category of benefits treated alike for program purposes are non-cash payments-in-kind, except the statutorily prescribed value of housing provided by an employer, noted earlier. All such in-kind payments made direct to a household nor cash payments made to someone else on behalf of the household.
>
> The Food and Nutrition Service believes that its policy of considering cash payments as income and payments-in-kind not as income is reasonable and is designed to assure uniformity and prevent inequities that would result from food stamp certification personnel in each state having to appraise and assign subjective dollar values to benefits in services not provided as cash payments. Their uniform national standards were devised to assure that an applicant for food stamps is evaluated according to National Standards and not by separate standards prescribed by the state wherein he applies. Accordingly, requiring states to assign monetary values to in-kind payments would defeat the objectives sought to be established by the Uniform National Standards."

We concluded above that rent supplement payments were properly characterized as vendor payments and therefore includable as income. In contrast, there is no attempt in public housing pursuant to 42 U.S.C. § 1401 *et seq.* to correlate the loan, grant, or annual contribution with individual tenants or even with individual units regardless of occupancy. Rather the purpose of the subsidy is to assist the public housing agency in achieving and maintaining the low-income character of the project *as a whole.* Thus while public housing subsidies defray a portion of the housing project's operating costs and thereby enable the project to provide the in kind benefit of cheaper housing, rent supplement payments defray *individual* housing costs.

Although the difference here may appear primarily an accountant's bookkeeping dilemma, the justification in distinguishing between in kind benefits and vendor payments is illustrated here by the practical consequences of the different modes of subsidy. The vendor payments are easily ascertained, and as found by the district court, there is no accurate and easily ascertained measure of the value of housing in the low-rent public housing.

 We recognize the unintended advantage the Secretary's distinction accords low-rent public housing tenants. However, considering the larger context of the validity of the distinction, we note the guidelines set forth in *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393].

To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard.

In upholding the challenged classification, we do not suggest it is the best or only reasonable solution of where to draw the line between what should and what should not be included as income for the purposes of the administration of the Food Stamp Act. That is not our role. We conclude only that the classification created by the Secretary's distinction between in kind benefits and vendor payments has a reasonable basis and is not violative of equal protection.

Affirmed.