**Jackie ANDERSON et al.,**
**Plaintiffs-Appellees,**

v.

**Earl BUTZ, as Secretary of the**
**Department of Agriculture,**
**Defendant-Appellant.**

No. 75–3647.

United States Court of Appeals,
Ninth Circuit.

Feb. 1, 1977.

Frederic D. Cohen (argued), Dept. of Justice, Washington, D.C., for defendant-appellant.

Robert M. Teets, Jr. (argued) Berkeley, Cal., Food Law Center–California Rural Legal Assistance, David B. Bryson, San Francisco, Cal., Catherine M. Bishop, Berkeley, Cal., for plaintiffs-appellees.

Before WRIGHT and GOODWIN, Circuit Judges, and INGRAM,[*] District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The essence of appellees' claim below was that Secretary of Agriculture Butz improperly included rent subsidies paid by the Department of Housing and Urban Development [HUD] as "income" for food stamp purposes. Appellees are heads of households qualified for food stamp coupons under the Federal Food Stamp Act (7 U.S.C. §§ 2011 et seq. (Supp.1976))[1] and are members of a certified nationwide class which includes all low income tenants of housing subsidized under the provisions of the Housing Act of 1937,[2] as amended, or Section 101 of the Housing and Urban Development Act of 1965,[3] as amended, who are, have been or will be required to have included in their household "income" for purposes of the food stamp program, the Housing and Urban Development subsidies paid to their landlords.

The district court granted summary judgment in favor of the appellees.[4] The Secretary appeals from the court's order declaring his implementing instruction unenforce-able and ordering that appellees be refunded any sums they were overcharged.

## I.

### THE INSTRUCTION

On August 5, 1974, the Secretary revised Section 2262.10 Food and Nutrition Service (FNS), Food Stamp (FS) Instruction 732–1 to require that certain housing subsidies paid by the Department of Housing and Urban Development be treated as income for food stamp purposes. The instruction provides:

Payments in money, except those for medical costs, made on behalf of the household by a person other than a member of the household. Such payments may be made by private or government sources, for instance, housing allowances from Housing and Urban Development (HUD) would be an example of a government vendor payment. To qualify as a vendor payment, there must be an identifiable payment on the household's behalf, the major benefit from which accrues to the household rather than the payer. If there is no identifiable payment or if the major benefit from such payment accrues to the payer and not the household, such benefit shall be considered income in kind and not income to the household.

FNS(FS) Instruction 732–1, Section 2262.10 "Vendor Payments".

Notice of proposed rule-making inviting comment was not given in the Federal Register, nor was the instruction published in

---

[*] Honorable William A. Ingram, United States District Judge of the Northern District of California, sitting by designation.

[1] Under the federal food stamp program, eligible low income households are allowed to buy an established value in coupons which may be exchanged for food at retail food stores. *See Knebel v. Hein,* —— U.S. ——, ——, n.9, 97 S.Ct. 549, 552, 50 L.Ed.2d 485 (1977). An eligible household purchasing food stamps does not pay the face value of the coupons; instead, cost is determined by "household income." The difference between the cost to the household and the face value of the coupons is the "bonus value." Because the cost of food stamps increases with income, the impact of

the "instruction" requiring certain housing allowances or subsidies paid by the Housing and Urban Development Administration to be included as income has the direct result of increasing the cost of food stamp coupons to the appellees.

[2] Pub.L. 75–412, 50 Stat. 889.

[3] Pub.L. 89–117, 79 Stat. 451.

[4] The district court opinion is published at 428 F.Supp. 245 (E.D.Cal.1975).

the Federal Register although the instruction was printed and available for public inspection and copying.

The Food Stamp Certification Handbook in which the instruction was published is an administrative staff manual containing instructions to state agencies administering the Food Stamp Act. The Handbook was, according to the Secretary, based on 7 C.F.R. § 271.3(c) which provides in part:

(c) *Income and resource eligibility standards of other households.*

\* \* \* \* \* \*

(1) *Definition of income.* (i) Monthly income means all income which is received or anticipated to be received during the month. To compute maximum monthly income for purposes of determining eligibility, income shall mean any of the following but is not limited to:

\* \* \* \* \* \*

(*f*) Payments received from federal aided public assisted programs, general assistance programs, or other assistance programs based on need;

\* \* \* \* \* \*

(*h*) Payments, except those for medical costs, made on behalf of the household by a person other than a member of the household;

\* \* \* \* \* \*

(*m*) The actual value of housing received from an employer by members

of a household as income in kind, in lieu of or supplemental to household income, not to exceed $25 per month.

. . .

(ii) The following shall not be considered income to the household (this list is inclusive and no other exclusions from income shall be allowed):

\* \* \* \* \* \*

(*c*) Any gain or benefit which is not in money (except as provided in paragraph (c)(1)(i)(*m*) of this section);

\* \* \* \* \* \*

II.

### THE ARGUMENTS

At oral argument the government contended that the promulgation of the instruction was authorized by the controlling regulations and that the instruction itself was merely a reasonable interpretation of the vendor payment provision of 7 C.F.R. § 271.3(c)(1)(i)(*h*).[5]

Because HUD subsidies are clearly includable in income as vendor payments, the government argued, the Secretary's instruction was an interpretive rule excluded from the notice and comment requirement of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1970). Although it did not address the issue in oral argument, the government further asserted in its brief that it had complied with the applicable provisions of the Freedom of Information Act (FOIA), specifically 5 U.S.C. § 552(a)(2)(B) and (C) (Supp.1976),[6] by mak-

---

**5.** The court in *Compton v. Tennessee Dept. of Public Welfare*, 532 F.2d 561 (6th Cir. 1976), has decided that rent supplement payments constitute a proper example of vendor payments and that Instruction 732–1 was in interpretation of 7 C.F.R. 271.3(c)(1)(i)(*h*). After noting the passage of the Ichord Amendment (see text *infra*), it reasoned that a close reading of the amendment evinced a Congressional intent to embrace only in kind benefits and not vendor payments. It concluded: "Thus the effect of the amendment is not a limitation but rather an exception to the prior policy that *no* in kind benefits were includable in income. 7 C.F.R. § 271.3(c)(1)(ii)(*c*)." 532 F.2d at 565.

The *Compton* court, however, did not reach the procedural arguments presented to us because they were not raised in the district court. 532 F.2d at 563 n. 1.

**6.** These sections provide:

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; \* \* \*

(C) administrative staff manuals and instructions to staff that affect a member of the public; \* \* \*

ing the instruction available for public inspection and copying.

In response, appellees argued that in 1973 Congress had narrowed the Secretary's authority under 7 U.S.C. § 2014(b) [7] by passing the Ichord Amendment,[8] Pub.L. 93–86 § 3(g), Aug. 10, 1973, 87 Stat. 246. The legislative history of the amendment and the amendment itself indicated that housing payments were to be included as income only if supplied by an employer.[9] In a procedural attack, appellees argued that the newly announced instruction represented a significant change in policy and was required to be published in the Federal Register under APA § 553 [10] and under FOIA § 552(a)(1)(D).[11]

▪ Although many issues were clearly presented to us, we choose to dispose of this case on the sole ground that the instruction is void for the Secretary's failure to comply with the publication requirement of the FOIA. *Hotch v. United States,* 212 F.2d 280 (9th Cir. 1954). In so holding we assume *arguendo* that the instruction is an interpretive rule. We do not, however, decide that issue.

## III.

### THE FREEDOM OF INFORMATION ACT

As Professor Kenneth C. Davis, writing in *Administrative Law of the Seventies,* § 3A.7 (June 1976) has recognized, there is still difficulty in determining when publication in the Federal Register is required by the FOIA. He writes:

"The troublesome problem is to find the meaning of the two terms, 'statements of general policy' and 'interpretations of general applicability.'" The Act in § 522(a)(1)(D) requires publication in the Federal Register of "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." But in § 552(a)(2) availability for public inspection, not publication, is required for "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," and for "administrative staff manuals and in-

---

7. 7 U.S.C. § 2014(b) (Supp.1976) provides in part:

The standards established by the Secretary, at a minimum, shall prescribe the amounts of household income and other financial resources, including both liquid and non-liquid assets, to be used as criteria of eligibility.

8. In 1973 the Ichord Amendment added to the foregoing provision the following:

*Provided,* That such standards shall take into account payments in kind received from an employer by members of a household if such payments are in lieu of or supplemental to household income: *Provided further,* That such payments in kind shall be limited only to housing provided by such employer to such employee and shall be the actual value of such housing but in no event shall such value be considered to be in excess of the sum of $25.00 per month.

9. To support their contention that the Ichord Amendment specifically and intentionally limited the in kind housing payments which may be considered income for food stamp purposes, appellees cite Congressman Ichord's statement made when offering the amendment:

As I stated previously, I submitted this amendment to [Rep. Foley]. He objected on the ground that it would get into the problem

of other welfare supplements received by the applicant, but I have changed the amendment to apply only to payments in kind received from an employer.

119 Cong.Rec. 24941 (July 19, 1973).

10. 5 U.S.C. § 553(b)(A) provides in relevant part:

(b) General notice of proposed rule making shall be published in the Federal Register, * * * Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; * * *

11. 5 U.S.C. § 552(a)(1)(D) provides:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

* * * * * *

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; * * *

structions to staff that affect a member of the public."

Even after the Act has been effective for eight years, no authoritative answer can be given to the simple question whether interpretative rules (a) must be published, (b) need not be, or (c) some must be and some need not be. The answer depends in part on the difference between "interpretations of general applicability formulated and adopted by the agency" and "interpretations which have been adopted by the agency"; the first must be published, but not the second. The answer surely cannot be extracted from the statutory words. The legislative history is completely unhelpful.

No court has written a reliable analysis of the question.

*Id.* at 72.

The district court in *Tax Analysts & Advocates v. IRS,* 362 F.Supp. 1298, 1303–04 (D.D.C.1973), modified on other grounds, 164 U.S.App.D.C. 243, 505 F.2d 350 (1974), in dealing with the question of whether § 552 requires publication of interpretive rules stated:

> Read[ing § 552(a)(1)(D) and § 552(a)(2)(B)] together these provisions can only mean that interpretations of general applicability are to be published in the Federal Register while all other interpretations adopted by an agency, i. e. those *not* of general applicability, are to be made available to the public, albeit they need not be published.

The question, then, is to determine what is meant by interpretations of "general applicability." The court in *Lewis v. Weinberger,* 415 F.Supp. 652, 659 (D.N.M.1976), recently addressed this question. It stated: "[A]n administrative interpretation [is not] deemed to be 'of general applicability' if: (1) only a clarification or explanation of existing laws or regulations is expressed; and (2) no significant impact upon any segment of the public results." The court further stated: "Also within the availability

requirement of 552(a)(2)(B) are statements affecting only an agency's internal or housekeeping operations . . ." *Id.*

■ This court must inquire into the substance and effect of the policy pronouncement. The label attached is not controlling. *Piercy v. Tarr,* 343 F.Supp. 1120, 1128 (N.D. Cal.1972). Having done so, we conclude that the instruction affects more than the internal operations of the food stamp program and has a significant impact on food stamp recipients.

The instruction was a change from the existing practice of not including federal housing subsidies in calculating income. As a mandatory directive for determining food stamp eligibility, binding on political subdivisions participating in the food stamp program [7 U.S.C. § 2019(e)(2) (Supp.1976); 7 C.F.R. § 271.8(c)(1) (1976)], its effect will be widespread and immediate. The substantive rights of food stamp recipients were directly affected because the cost of their allocated food stamps increased.[12]

■ Our holding cannot be circumvented by alleging that appellees had actual and timely notice of the unpublished instruction. See 5 U.S.C. § 552(a)(1) (Supp.1976). Such notification occurred when the instruction took effect. This is not the timely notice contemplated by Congress when it enacted that exemption to the standard FOIA procedures. *See Northern California Power Agency v. Morton,* 396 F.Supp. 1187, 1191 (D.D.C.1975), *aff'd,* 176 U.S.App.D.C. 241, 539 F.2d 243 (1976). *Cf. Morton v. Ruiz,* 415 U.S. 199, 232–36, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

The decision of the district court is affirmed.

---

12. Affidavits filed in the case show that including housing subsidies as income increased the cost of Vera Butler's and Nicole Criswell's food stamps from $12 to $21 and from $26 to $50, respectively, and rendered Eulalia Noriega ineligible for food stamp assistance.