860 F.2d 951
 23 Soc.Sec.Rep.Ser. 539, Medicare&Medicaid Gu 37,529
MT. DIABLO HOSPITAL DISTRICT, et al., Plaintiffs-Appellants,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
ST. JOHN'S HOSPITAL AND HEALTH CENTER, et al., Plaintiffs-Appellants,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
 Nos. 87-6265, 87-6270.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1988.
Decided Nov. 4, 1988.
 
 Patric Hooper, Hooper, Lundy & Bookman, Margaret M. Manning, Weissburg and Aronson, Los Angeles, Cal., for plaintiffs-appellants.
 David S. Cade, Office of the General Counsel, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON, WIGGINS and BRUNETTI, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Appellant Hospitals challenge the validity of a policy of the Secretary of Health and Human Services (the Secretary) regarding the timing of certain Medicare bonus payments. The bonuses in question are paid by the federal government to hospitals pursuant to the Tax Equity and Fiscal Responsibility Act of 1982, 42 U.S.C. Sec. 1395ww (1982 & Supp. III 1985) (TEFRA). The Hospitals contend that the district court erred in upholding the Secretary's policy of paying TEFRA bonuses at the final settlement stage of the Medicare reimbursement process rather than at the tentative settlement stage. They also argue that they are entitled to interest on TEFRA bonuses that have been unlawfully delayed. We hold that the Secretary's TEFRA bonus payment policy is procedurally invalid and remand the issue of interest to the district court.
 
 
 2
 * BACKGROUND
 
 A. Regulatory Background
 
 3
 Through the Medicare program, the federal government reimburses medical service providers for the cost of providing medical services to aged and disabled persons. 42 U.S.C. Secs. 1395-1395zz (1982 & Supp. III 1985). Medical service providers receive reimbursement payments from private financial entities, which serve as agents for the Secretary. 42 U.S.C. Sec. 1395h; 42 C.F.R. Secs. 421.100 to .128 (1987). These "intermediaries" make three types of reimbursement payments to providers: interim payments, tentative settlement payments, and final settlement payments.
 
 
 4
 Providers receive the bulk of their reimbursement through interim payments made on a monthly basis. During the year, a provider's actual costs are periodically estimated and paid. 42 U.S.C. Sec. 1395g(a); 42 C.F.R. Sec. 413.64(a)(1).
 
 
 5
 At the end of the year, the provider submits to the intermediary a cost report detailing all reimbursable amounts for the year. At that point, a tentative settlement is reached and payments to the provider are adjusted: If the provider has been overpaid, it reimburses the government through the intermediary; if the provider has been underpaid, the intermediary further reimburses the provider. 42 U.S.C. Secs. 1395g(a), 1395x(v)(1)(A) (authorizing adjustments); 42 C.F.R. Sec. 413.64(f). At the tentative settlement stage, the cost report is accepted as true if it does not present obvious inaccuracies. 42 C.F.R. Sec. 413.64(f)(2).
 
 
 6
 Following a complete audit of the cost report, which may take as long as one year, a final settlement is reached. The intermediary issues a notice setting forth the intermediary's final determination of the amount of reimbursement due the provider. 42 C.F.R. Sec. 405.1803. The provider once again either refunds any amount overpaid or receives any amount still owing. Sec. 405.1803(c).
 
 
 7
 In 1982, Congress established a means of encouraging hospitals to keep their Medicare costs down. As part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Congress enacted an incentive scheme whereby "rate of increase" limits are set for each hospital. Pub.L. No. 97-248, Sec. 101, 96 Stat. 324, 331-36 (codified at 42 U.S.C. Sec. 1395ww (1982 & Supp. III 1985)); see also 42 C.F.R. Sec. 413.40(a)(1) (implementing regulations). Hospitals whose costs are less than or equal to their limits are entitled to incentive payments, while hospitals whose costs exceed their limits are reimbursed only twenty-five percent of their excess costs. 42 U.S.C. Sec. 1395ww(b)(1); 42 C.F.R. Sec. 413.40(d). The incentive payments are known as "TEFRA bonuses." The twenty-five percent cap on excess costs is known as the "TEFRA penalty." Thus, TEFRA bonuses are paid to providers in addition to their actual costs for services provided. TEFRA penalties are partial reimbursements for service-related costs.
 
 
 8
 This case raises the question: At what point in the three-step Medicare reimbursement process should TEFRA bonuses be paid?[1] The Hospitals argue that TEFRA bonuses should be paid at the tentative settlement stage along with all other Medicare monies owed to medical service providers. The Secretary argues that TEFRA bonuses should be treated different from other Medicare monies owed to providers, including TEFRA penalties, and paid only at the final settlement stage.
 
 
 9
 The statute establishing TEFRA bonuses and penalties is silent on the issue of when they should be paid. In a section entitled "Computation of payment; definitions; exemptions; adjustments," Congress simply indicates how bonuses and penalties should be calculated. TEFRA bonuses are defined and calculated as follows:
 
 
 10
 [I]f the operating costs ... (A) are less than or equal to the target amount ..., the amount of the payment with respect to such operating costs [the TEFRA bonus] ... shall be equal to the amount of such operating costs, plus (i) 50 percent of the amount by which the target amount exceeds the amount of the operating costs, or (ii) 5 percent of the target amount, whichever is less....
 
 
 11
 42 U.S.C. Sec. 1395ww(b)(1) (emphasis added). TEFRA penalties are similarly defined:
 
 
 12
 [I]f the operating costs ... (B) are greater than the target amount, the amount of the payment with respect to such operating costs [the TEFRA penalty] ... shall be equal to (i) the target amount, plus (ii) ... 25 percent of the amount by which the amount of the operating costs exceeds the target amount....
 
 
 13
 Id. (emphasis added).
 
 
 14
 The regulations implementing the TEFRA incentive program also fail to state in unambiguous terms when TEFRA bonuses should be paid. The regulations do, however, state when TEFRA bonuses will be "determined. " Both TEFRA bonuses and TEFRA penalties must be "determined" at the tentative settlement stage of the Medicare reimbursement process:
 
 
 15
 (i) At the end of each 12-month cost reporting period ... the hospital's intermediary will compare a hospital's allowable cost per case with that hospital's target amount for that period.
 
 
 16
 ....
 
 
 17
 (iii) If the hospital's actual allowable costs do not exceed the target amount, reimbursement [the TEFRA bonus] will be determined under paragraph (d)(2) of this section.
 
 
 18
 (iv) If the hospital's actual costs exceed the target amount, reimbursement [the TEFRA penalty] will be determined under paragraph (d)(3) of this section.
 
 
 19
 42 C.F.R. Sec. 413.40(d)(1) (emphasis added).[2]
 
 
 20
 The Secretary has instructed intermediaries to pay TEFRA penalties as early as the interim payment stage of the Medicare reimbursement process. See Provider Reimbursement Manual, pt. 1, Sec. A2406C.2.d (Amendment Supp.1982) [hereinafter the Manual]. In contrast, the Secretary has twice indicated that payment of TEFRA bonuses should be delayed until the final settlement stage.
 
 
 21
 In 1982, the year the TEFRA incentive scheme was enacted, the Secretary issued a policy statement that could be construed as requiring payment of TEFRA bonuses at the final settlement stage of the Medicare reimbursement process. In the Provider Reimbursement Manual, which is a collection of policies published by the Secretary to guide intermediaries, the Secretary stated that "Intermediaries should not include in the interim rate any amount applicable to an anticipated incentive payment. Such payments [TEFRA bonus payments] are appropriate only after the final cost report has been submitted and settled." Id. Sec. A2406C.2.e.
 
 
 22
 Unfortunately, the Secretary added these two sentences to the section of the Manual concerning interim payments. The Secretary failed to add similar statements to the sections of the Manual concerning tentative settlement payments and final settlement payments. Thus, intermediaries looking for guidance on whether to pay TEFRA bonuses at the tentative settlement stage or the final settlement stage of the Medicare reimbursement process could not easily find the Secretary's policy.
 
 
 23
 Confusion concerning the timing of TEFRA bonus payments resulted from the ambiguous nature of the Secretary's statement and the Secretary's veiled placement of the statement in the Manual. For almost two years, many intermediaries calculated and paid both TEFRA bonuses and TEFRA penalties at the tentative settlement stage of the reimbursement process.
 
 
 24
 In response to numerous inquiries, the Secretary finally issued a clarifying memorandum in August 1984. The memorandum confirmed that the Secretary wanted intermediaries to treat TEFRA bonuses different from TEFRA penalties. While TEFRA penalties should continue to be paid at the tentative settlement stage of the Medicare reimbursement process, payment of TEFRA bonuses should be delayed until the final settlement stage:
 
 
 25
 [T]he current instruction in HCFA Pub. 15-1, section A2406C.2.e, constitutes the correct guidance on when to make the incentive payment to a hospital qualifying for it.....[I]ntermediaries must apply the instructions in A2406 which state that payment of any incentive amount under TEFRA be made only after the cost report has been submitted and settled..... The requirement of the instruction in A2406 is met at such time as the Notice of Amount of Program Reimbursement (NPR) is sent [i.e. at the final settlement stage]....
 
 
 26
 Memorandum FQA-56 from Henry J. Hehir, Acting Director, Office of Reimbursement Policy, BERC, to Acting Associate Regional Administrator, Atlanta, Division Of Financial Operations (Aug. 9, 1984) [hereinafter the 1984 Memorandum].
 
 B. Factual and Procedural Background
 
 27
 Because the Hospitals were able to keep their costs low, they qualified for TEFRA bonus payments. The Hospitals asked their intermediaries to pay TEFRA bonuses as well as TEFRA penalties at the tentative settlement stage of the Medicare reimbursement process. Pursuant to the Secretary's 1984 Memorandum, the intermediaries refused to pay TEFRA bonuses at the tentative settlement stage, and indicated that they would delay bonus payments until the final settlement stage.
 
 
 28
 The Hospitals initiated litigation in the district court, seeking to set aside the Secretary's 1984 Memorandum and to compel the Secretary to pay TEFRA bonuses at the tentative settlement stage of the Medicare reimbursement process. The Hospitals argued, inter alia, that the Secretary's TEFRA bonus payment policy (1) contravenes the Secretary's Medicare regulations; (2) is arbitrary, capricious, and without a rational basis; and (3) is procedurally invalid because it was not adopted pursuant to the notice and comment rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. Sec. 553 (1982). Initially, the district court dismissed the Hospitals' suit for failure to exhaust administrative remedies.
 
 
 29
 The administrative remedies contemplated by the district court turned out to be unavailable to the Hospitals.[3] While the Hospitals were pursuing those remedies, however, the Hospitals reached the final settlement stage of the reimbursement process and received their TEFRA bonuses. Therefore, when the Hospitals returned to district court, they filed an amended complaint seeking to set aside the Secretary's TEFRA bonus payment policy, and to require the Secretary to pay interest on the delayed TEFRA bonuses.
 
 
 30
 The Hospitals and the Secretary filed cross motions for summary judgment. In granting the Secretary's motion, the district court found that the Secretary's policy of delaying payment of TEFRA bonuses until the final settlement stage of the Medicare reimbursement process is both procedurally and substantively valid. We reverse on the ground that the policy is procedurally invalid.
 
 II
 STANDARD OF REVIEW
 
 31
 We review the district court's grant of summary judgment de novo. Paulson v. Bowen, 836 F.2d 1249, 1250 (9th Cir.1988).
 
 III
 DISCUSSION
 
 32
 A. The Procedural Validity of the Secretary's TEFRA Bonus Payment Policy
 
 
 33
 The Hospitals challenge the procedural and substantive validity of the Secretary's policy of paying TEFRA bonuses at the final settlement stage of the Medicare reimbursement process. Because we find that the Secretary's policy is procedurally invalid, we need not examine the policy's substantive validity.[4]
 
 
 34
 The Administrative Procedure Act, 5 U.S.C. Secs. 500-576 (1982 & Supp. IV 1986) (APA) sets limits on the ways in which the Secretary may adopt new rules. When a policy acts as a substantive rule and alters an existing regulatory scheme, the Secretary must adopt that policy according to procedures set forth in the APA. See 5 U.S.C. Sec. 553.
 
 
 35
 APA section 553 requires administrative agencies to give the public notice of proposed rules by publishing those rules in the Federal Register. 5 U.S.C. Sec. 553(b). Section 553 also establishes the public's right to participate in the rulemaking process by requiring agencies to give the public an opportunity to consider and comment on proposed rules before the rules are adopted. Sec. 553(c). The procedures required by section 553 are commonly called "notice and comment rulemaking" procedures.
 
 
 36
 Not all administrative rules are subject to section 553 notice and comment rulemaking procedures. Rules, or policies, that "merely clarify or explain existing law or regulations" are exempt from section 553 requirements. Linoz v. Heckler, 800 F.2d 871, 877 (9th Cir.1986) (quoting Powderly v. Schweiker, 704 F.2d 1092, 1098 (9th Cir.1983)) (emphasis added). Such rules, or policies, are called "interpretive rules." Id.; Sec. 553(b)(3)(A). Rules that "effect a change in existing law or policy," are subject to the notice and comment rulemaking requirements of section 553. Linoz, 800 F.2d at 877 (quoting Powderly, 704 F.2d at 1098) (emphasis added). These rules are called "substantive rules." Id.
 
 
 37
 The label an agency gives to a particular statement of policy is not dispositive. Anderson v. Butz, 550 F.2d 459, 463 (9th Cir.1977). "This court must inquire into the substance and effect of the policy pronouncement." Id. Thus, it does not matter whether the Secretary calls his pronouncements in the 1982 Manual or the 1984 Memorandum policy statements, interpretive rulings, or substantive rulings. We must independently determine the effect of the Secretary's statements, and decide whether they were adopted according to the appropriate procedures.
 
 
 38
 The parties dispute the proper characterization of the Secretary's TEFRA bonus payment policy. The Secretary contends that his policy of paying TEFRA bonuses at the final settlement stage of the Medicare reimbursement process is merely an interpretive ruling, which explains and clarifies the relationship of the TEFRA bonus program to the three-step Medicare reimbursement scheme. The Hospitals argue that the Secretary's TEFRA bonus payment policy changed the regulatory practice of paying all amounts owed to providers under the Medicare program at the tentative settlement stage of the reimbursement process.[5]
 
 
 39
 If the Secretary's TEFRA bonus payment policy acted as an interpretive ruling, and merely explained or clarified the Medicare reimbursement scheme, then the policy was not subject to the procedural requirements of APA section 553. If the Secretary's policy acted as a substantive ruling, however, and changed the Medicare reimbursement scheme, then the Secretary should have formally adopted that policy through notice and comment rulemaking procedures.[6] Neither the 1982 Manual nor the 1984 Memorandum conformed to the notice and comment rulemaking requirements of APA section 553. As a result, we must find that the Secretary's TEFRA bonus payment policy is procedurally invalid if it acts as a substantive ruling.
 
 
 40
 In supporting his position that the TEFRA bonus payment policy merely clarified the pre-existing regulatory scheme, the Secretary argues that the TEFRA statute, the TEFRA regulations, and the regulations concerning the three-step Medicare reimbursement process all fail to establish the timing of TEFRA bonus payments. Because the Secretary contends that there was no law governing the timing of TEFRA bonus payments, he asserts that his TEFRA bonus payment policy could not have changed any existing law or policy. Instead, he argues that his policy merely explained how TEFRA bonuses fit into the three-step Medicare reimbursement process.
 
 
 41
 First, the Secretary alleges that the three-step Medicare reimbursement process of interim payments, tentative settlements, and final settlements was established to reimburse only actual, out-of-pocket costs incurred by medicare providers. Unlike most reimbursement payments, TEFRA bonuses do not reimburse providers for actual, out-of-pocket costs. Rather, the bonuses reward providers for keeping out-of-pocket costs from rising too quickly. Accordingly, the Secretary concludes that the regulations regarding interim payments, tentative settlements, and final settlements shed no light on the timing of TEFRA bonus payments.[7]
 
 
 42
 Second, the Secretary argues that the TEFRA statute and the TEFRA regulations are silent on the issue of when TEFRA bonuses should be paid. According to the Secretary, the TEFRA statute, 42 U.S.C. Sec. 1395ww(b), simply describes how TEFRA bonuses and penalties will be calculated. The TEFRA regulations, 42 C.F.R. Sec. 413.40, state that TEFRA bonuses and penalties should be "determined" at the tentative settlement stage. The Secretary insists that the word "determined," as it is used in the TEFRA regulations, means only calculated, and not paid. Thus, the Secretary concludes that the TEFRA statute and the TEFRA regulations set forth only the means of calculating TEFRA bonuses and fail to state a timetable for bonus payments.
 
 
 43
 In light of the above arguments, the Secretary contends that his policy statements in the 1982 Manual and the 1984 Memorandum simply filled a vacuum of information and explained and clarified the timing of TEFRA bonus payments.
 
 
 44
 We are not persuaded by the Secretary's characterization of his TEFRA bonus payment policy. The Secretary is correct in noting that neither the TEFRA statute nor the TEFRA regulations explicitly spell out a timetable for TEFRA bonus payments. When read together, however, the TEFRA statute, the TEFRA regulations, and the tentative settlement regulations, clearly indicate that TEFRA bonus payments should be made at the tentative settlement stage of the Medicare reimbursement process.
 
 
 45
 The tentative settlement regulations state that the tentative settlement stage of the Medicare reimbursement process is designed "to bring the interim payments made to the provider during the period into agreement with the reimbursable amount payable to the provider for the services furnished to program beneficiaries during that period." 42 C.F.R. Sec. 413.64(f)(1) (emphasis added). This process compares "the total amount of reimbursement the provider is due to receive from the program " with the total interim payments made during the year. Sec. 413.64(f)(3) (emphasis added).
 
 
 46
 Contrary to the Secretary's interpretation, the tentative settlement regulations do not limit reimbursement payments to repayments of actual, out-of-pocket costs. In fact, the language of the tentative settlement regulations is quite broad. The phrases "reimbursable amount payable to the provider" and "total amount of reimbursement the provider is due to receive from the program" strongly imply that all amounts due the provider under the Medicare program will be both calculated and paid at the tentative settlement stage of the reimbursement process.
 
 
 47
 This implication is confirmed by the language of the TEFRA statute and the TEFRA regulations. As noted above, TEFRA bonuses are not repayments of actual, out-of-pocket costs. Rather, they are bonus payments to reward providers for limiting costs. TEFRA penalties, on the other hand, are partial repayments of actual, out-of-pocket costs. Thus, TEFRA penalties fit within the common meaning of the word "reimbursement," while TEFRA bonuses do not. Nonetheless, the TEFRA statute and the TEFRA regulations treat both TEFRA penalties and TEFRA bonuses as "reimbursement" due a provider under the Medicare program.
 
 
 48
 The TEFRA statute refers to TEFRA bonuses and penalties equally as "the amount of the payment with respect to ... operating costs." 42 U.S.C. Sec. 1395ww(b)(1)(A), (B). The TEFRA regulations are even more explicit. They refer to both TEFRA bonuses and TEFRA penalties as "reimbursement." 42 C.F.R. Sec. 413.40(d)(1), (iii), (iv). Thus, despite the different nature of TEFRA bonuses and TEFRA penalties, both the statute and the regulations treat TEFRA bonuses and penalties as the kinds of payments that should, absent a clearly established regulatory exception to the general rule, be included in the total amount of reimbursement due a medical services provider under the Medicare program.
 
 
 49
 In addition to using language that conforms both TEFRA bonuses and TEFRA penalties to the language of the tentative settlement regulations, neither the TEFRA statute nor the TEFRA regulations give any indication that TEFRA bonus payments should be excluded from the tentative settlement stage of the Medicare reimbursement process. Thus, the tentative settlement regulations combined with the TEFRA statute and the TEFRA regulations call for payment of TEFRA bonuses at the tentative settlement stage.
 
 
 50
 The TEFRA regulations further support to the conclusion that TEFRA bonuses should be paid at the tentative settlement stage of the Medicare reimbursement process. The regulation requires that intermediaries "determine" the amount of TEFRA bonuses and penalties at "the end of each 12-month cost reporting period." Id. Sec. 413.40(d)(1)(i), (iii), (iv). The phrase "at the end of each 12-month cost reporting period" tracks the tentative settlement regulations, which state that tentative settlement occurs "at the end of the reporting period." Sec. 413.64(f)(1). Although the word "determined" does not necessarily mean "paid," that would appear to be the logical meaning of the word in this context where the tentative settlement regulations and the TEFRA regulations fit together in every other respect.
 
 
 51
 We hold that the existing regulatory scheme indicates that TEFRA bonuses are part of the total reimbursement due a provider, which must be paid at the tentative stage of the Medicare reimbursement process. Any policy that excludes TEFRA bonuses from the established scheme of paying the "total amount of reimbursement the provider is due" at the tentative settlement stage represents a change in law and policy that must be promulgated according to the notice and comment rulemaking requirements of APA section 553. Because the Secretary adopted his TEFRA bonus payment policy without following section 553 requirements, the policy is procedurally invalid.
 
 
 52
 Our holding is supported by Linoz v. Heckler, 800 F.2d 871 (9th Cir.1986). In Linoz, as in the instant case, we had to decide whether a manual statement purporting to merely interpret a regulation was an interpretive ruling or a substantive ruling. The regulation "authorized payment for ambulance service to the 'nearest institution with appropriate facilities.' " Id. at 874 (quoting 42 C.F.R. Sec. 405.232(i) (1981)). The manual stated that "[t]he individual physician who practices in a hospital is not a consideration in determining whether the hospital has appropriate facilities." Id. n. 2 (quoting section 2120.3F of the Carrier's Manual). We concluded that the regulation stated a general rule, and that the policy in the manual stated a new exception to that rule:
 
 
 53
 [I]nstead of simply clarifying a pre-existing regulation, section 2120.3F carved out a per se exception to the rule that ambulance service to the "nearest institution with appropriate facilities" was covered under Part B of the Medicare program. The provision withdrew coverage previously provided and thus "effect[ed] a change in existing law or policy." We therefore find that it was substantive in nature.
 
 
 54
 Id. at 877 (citations omitted).
 
 
 55
 This case is similar to Linoz. Absent any expression of a timing policy in the TEFRA statute or the TEFRA regulations, the existing regulations regarding the timing of reimbursement govern TEFRA payments. The Secretary's TEFRA bonus payment policy carved out a per se exception to the general rule that all reimbursement due a provider in connection with the Medicare program will be paid and adjusted at the tentative settlement stage. As an exception to the general rule, the Secretary's policy constitutes a substantive ruling that should have been adopted according to the notice and comment rulemaking requirements of APA section 553.
 
 
 56
 B. Interest on Unlawfully Delayed TEFRA Bonus Payments
 
 
 57
 The Hospitals contend that they are entitled to receive interest on any TEFRA bonuses that should have been paid at the tentative settlement stage of the Medicare reimbursement process rather than at the final settlement stage. The district court did not decide the interest question because it determined that the Secretary's policy of paying TEFRA bonuses at the final settlement stage was procedurally and substantively valid.
 
 
 58
 The Hospitals allege that the Secretary made the following statement to the district court in support of his motion to dismiss the Hospitals' first complaint:
 
 
 59
 Under plaintiffs' argument, if they must wait ... before they can obtain judicial review, they will, by definition, not receive the relief they seek, i.e., immediate payment of their bonuses. Plainly, however, full relief can be obtained even several years hence. If, upon judicial review, after a final decision of the Secretary under 42 U.S.C. Sec. 1395oo(f), the Court agrees with plaintiffs that the incentive bonuses should have been paid at the time the cost reports were filed, the Court need simply order that interest be paid computed from the date the cost reports were filed.
 
 
 60
 Thus, the Secretary represented to the district court that interest would be available to the Hospitals if it turned out that TEFRA bonus payments should have been made at the tentative settlement stage of the reimbursement process. This representation was made in an effort to induce the district court to delay the Hospital's case by requiring the Hospitals to pursue administrative proceedings that turned out to be unavailable.
 
 
 61
 In the brief submitted to this panel, the Secretary has completely reversed his position. The Secretary now asserts that the Hospitals may not collect interest on the TEFRA bonus payments, even if this court finds that they were unlawfully delayed.
 
 
 62
 Because of the Secretary's complete reversal of his position, the Hospitals argue that if this court does not award interest under one of the relevant Medicare statutory provisions, the court should at least award interest under Fed.R.Civ.P. 11 as a means of imposing sanctions on the Secretary for his inconsistent pleadings.
 
 
 63
 Rather than assess the truthfulness of pleadings submitted to the district court, we remand the entire question of interest to the district court. The district court should consider (1) whether the Medicare Act authorizes interest payments on the delayed TEFRA bonus payments; (2) if the Act does not authorize the payment of interest, whether interest should be awarded as a Fed.R.Civ.P. 11 sanction against the Secretary for his inconsistent pleadings; and (3) how much, if any, interest should be awarded to the Hospitals.
 
 CONCLUSION
 
 64
 For the foregoing reasons, this case is REVERSED AND REMANDED.
 
 
 
 [1]
 TEFRA penalties are factored into the entire three-step Medicare reimbursement process. See Provider Reimbursement Manual, pt. 1, Sec. A2406C.2.d (Amendment Supp.1982) (excess costs will be limited at the interim payment stage)
 
 
 [2]
 Paragraphs (d)(2) and (d)(3) of the regulation spell out the statutory method of calculating TEFRA bonuses and TEFRA penalties, respectively
 
 
 [3]
 The district court held that it did not have authority to hear the case until after the Provider Reimbursement Review Board (the Board) issued a decision in the matter. The Board, however, decided that it did not have jurisdiction over the dispute. Following the Board's denial of jurisdiction, the Hospitals returned to the district court
 
 
 [4]
 We construe the TEFRA statute only to shed light on the meaning of the existing Medicare regulations. We do not reach the question of whether the TEFRA statute allows the Secretary to adopt, through proper notice and comment rulemaking procedures, the policy of paying TEFRA bonuses at the final settlement stage of the Medicare reimbursement process
 
 
 [5]
 In the course of disputing the proper characterization of the Secretary's TEFRA bonus payment policy, the parties also disagree about when the Secretary first expressed his policy. The Secretary argues that the 1982 statement in the Manual represented the first statement of the policy. The Hospitals contend that the Secretary did not officially express the policy until the 1984 Memorandum
 We need not decide when the Secretary first expressed his policy. Neither the 1982 Manual nor the 1984 Memorandum were issued according to the notice and comment rulemaking procedures of APA section 553. Thus, we need only look to see if the Secretary's policy acted as an interpretive ruling or as a substantive ruling.
 
 
 [6]
 Under 5 U.S.C. Sec. 553(a)(2), rulemaking relating to public benefits is exempt from the notice and comment rulemaking requirements of Sec. 553(b), (c). In 1971, however, the Secretary waived the public benefits exception. 36 Fed.Reg. 2532 (1971). Rules promulgated by the Secretary after 1971 are therefore subject to the normal section 553 requirements. Id.; Linoz, 800 F.2d at 877 n. 7. The policies in this case were adopted well after 1971
 
 
 [7]
 The Secretary's contention that the three-step Medicare reimbursement process governs only actual out-of-pocket costs accounts for the Secretary's different treatment of TEFRA bonuses and TEFRA penalties. TEFRA penalties, unlike TEFRA bonuses, are partial payments for actual costs. Thus, the Secretary concedes that TEFRA penalties must be paid according to the normal three-step Medicare reimbursement process. The Secretary argues that it is reasonable to pay TEFRA bonuses and TEFRA penalties at different times because penalties are reimbursement for actual costs and bonuses are not. We do not address the reasonableness or the substantive validity of the Secretary's policy because we find that it is procedurally invalid