FARMLAND INDUSTRIES, INC., Agrico Chemical Company, Allied Chemical Corporation, Amoco Oil Company, Borden, Inc. (Smith-Douglass, Division of Borden Chemical), CF Industries, Inc., International Minerals & Chemical Corporation, Royster Company, Terra Chemicals International, Inc., and Texasgulf, Inc., Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents.

PEOPLE OF the State of ILLINOIS, Illinois Commerce Commission and Patrick W. Simmons, Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

Nos. 80–1308, 80–1435.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1981.

Decided March 3, 1981.

Thomas F. McFarland, Jr., Chicago, Ill., Gordon P. MacDougall, Washington, D. C., for petitioners.

Daniel B. Harrell, I.C.C., Washington, D. C., James H. Durkin, Missouri Pacific R.R. Co., Chicago, Ill., for respondents.

Before BAUER, Circuit Judge, KUNZIG, Judge,* and WOOD, Circuit Judge.

BAUER, Circuit Judge.

Petitioners Farmland Industries, Inc. ("Farmland") and the State of Illinois seek judicial review of an Interstate Commerce Commission ("ICC") statement of policy change entered December 26, 1979. We deny the petitions for review.

I

In February 1979, the ICC published notice of its intention to adopt a policy statement modifying the criteria used to decide railroad abandonment applications. Specifically, the Commission proposed to include opportunity costs [1] as "one of the factors considered in balancing the public need for continuing service versus the burden on the carrier." 44 Fed.Reg. 10807 (1979).

The Commission received comments on its proposal from the American Association of Railroads, various railroad companies, shippers, shipper organizations, and state and federal government agencies. In December 1979, the Commission adopted the policy statement.

The State of Illinois, the Illinois Commerce Commission, and Patrick W. Simmons petitioned the ICC to reopen the opportunity costs proceeding and reconsider

---

* The Honorable Robert L. Kunzig, Judge of the *United States Court of Claims,* is sitting by designation.

1. The published notice of proposed policy change defined "opportunity costs" as "the real economic loss an entity experiences when it must forego some other, more profitable use of its resources." 44 Fed.Reg. 10807 (1979).

the December 26, 1979, decision. The Commission denied the petition on March 12, 1980.

The petitions for judicial review filed by Farmland and the State of Illinois have been consolidated. The American Association of Railroads is an intervening respondent.

## II

■ Petitioners claim that the challenged ICC pronouncement is a new rule, not a "genuine" policy statement as announced by the Commission.[2] Petitioners contend that we should review the ICC pronouncement to determine if there is substantial evidence to support the Commission's finding and to determine whether consideration of opportunity costs is "reasonably related to the purpose of the [Interstate Commerce Act]." *Mourning v. Family Publications Service Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973) (citation omitted). *See also* 5 U.S.C. § 706(2)(E).

■ We agree with the ICC that the challenged pronouncement is a policy statement rather than a new rule. A policy statement announces new factors the agency will consider in resolving future substantive questions. *Brown Exp., Inc. v. United States*, 607 F.2d 695, 701 (5th Cir. 1979); *Guardian Federal Savings and Loan v. Federal Savings and Loan Ins. Corp.*, 589 F.2d 658, 666 (D.C.Cir.1978). A policy statement operates prospectively, and it leaves the agency with freedom to exercise discretion in resolving substantive questions. *Assure Competitive Transportation, Inc. v. United States*, 635 F.2d 1301 (7th Cir. 1980). The

ICC pronouncement here on review satisfies these criteria. The statement announced that the ICC would consider evidence of opportunity costs "in all future abandonment cases" and that the opportunity cost evidence would be only one factor of many considered in the agency's traditional balancing test. 45 Fed.Reg. 4491, 4493 (1980).

■ We will review an agency policy statement to determine whether the pronouncement was "arbitrary, capricious, [or] an abuse of discretion . . ." or "in excess of statutory jurisdiction." 5 U.S.C. § 706(2)(A) & (C). *Assure Competitive Transportation, Inc. v. United States*, 635 F.2d 1301 (7th Cir. 1980). This standard of review is highly deferential; we are required to affirm the agency pronouncement if there is a rational basis for the Commission's decision. *Id.*

## III

■ Petitioner Farmland asserts that the adopted policy statement violates the statutory provision governing ICC abandonment decisions, 49 U.S.C. § 10903(a), and case law interpreting that statute. We disagree.

Section 10903(a)[3] authorizes the ICC to permit a railroad to abandon part of its rail lines if the Commission finds that abandonment is consistent with "public convenience and necessity." The Act does not define "public convenience and necessity" nor does it specify any criteria that the ICC must or should consider in deciding what is consistent with public convenience and necessity. Rather, the Act authorizes the ICC to use its discretion and expertise to determine, in

---

2. Petitioners do not challenge the adequacy of the procedures employed by the ICC in adopting the policy change. The Commission followed the procedures statutorily prescribed for rulemaking. 5 U.S.C. § 553. This, however, does not mean that the pronouncement was a new rule and not a genuine policy statement. The ICC used the rulemaking procedure in order to obtain comments from carriers and other interested parties. Although this procedure is not required for issuance of a policy statement, 5 U.S.C. § 533(b)(A), the Commission certainly is not prohibited from receiving comments on its proposal in this manner.

3. 49 U.S.C. 10903(a) provides in pertinent part:
 (a) A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission . . . may—
 (1) abandon any part of its railroad lines, or
 (2) discontinue the operation of all rail transportation over any part of its railroad lines;
 only if the Commission finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance . . . .

each instance, whether abandonment should be permitted. Heretofore, the ICC has engaged in balancing the needs of interstate commerce against the needs of intrastate commerce to determine whether abandonment is consistent with public convenience and necessity. This balancing approach has long been approved by the cases interpreting section 10903. As the Supreme Court observed in the landmark case of *Colorado v. United States*, 271 U.S. 153, 168–69, 46 S.Ct. 452, 455–56, 70 L.Ed. 878 (1926):

> The sole test prescribed is that abandonment be consistent with public necessity and convenience .... The benefit to one of the abandonment must be weighed against the inconvenience and loss to which the other will be subjected. Conversely, the benefits to particular communities and commerce of continued operation must be weighed against the burden thereby imposed upon other commerce
> ....
>
> \* \* \* \* \* \*
>
> Whatever the precise nature of these conflicting needs, the determination is made upon a balancing of the respective interests—the effort being to decide what fairness to all concerned demands. In that balancing, the fact of demonstrated prejudice to interstate commerce and the absence of earnings adequate to afford reasonable compensation are, of course, relevant and may often be controlling. But the Act does not make issuance of the certificate dependent upon a specific finding to that effect.

 The policy statement announcing that the ICC will consider opportunity costs

as a factor in abandonment cases does not alter the statutorily authorized and judicially approved balancing approach. The statement indicates only that the Commission will weigh opportunity costs as part of the burden to interstate commerce against which the needs of intrastate commerce will be balanced.[4] 45 Fed.Reg. at 4493–4494. We find that this change in policy does not violate the statutory mandate to authorize abandonment only when consistent with public convenience and necessity.[5]

## IV

The State of Illinois asserts that the policy statement exceeds the ICC's statutory authority. Illinois claims that congressional legislation was needed to effect this policy change. In support of its argument, Illinois cites President Carter's proposed amendment to section 10903 included within his proposed "Railroad Deregulation Act of 1979." In this proposal, the ICC would have been authorized to permit abandonment only (1) where no objection to the abandonment is made by a shipper or significant user, (2) where the revenues attributable to the line do not exceed the "full cost" of operation, including return on equity value comparable to that on equity issues of other firms of comparable capital structure and risk, and (3) where the benefit to the railroad (including the benefit of putting capital used on the line to other railroad use) exceeds the detriment to the public from loss of the service. H.R.Doc.No. 96–78. Congress did not adopt this proposal. Petitioner argues that Congress' rejection of the proposed legislation, especially

4. Farmland argues that the ICC should be permitted to consider opportunity costs, if at all, as benefits to interstate commerce rather than as burdens. This argument proves too much. If the ICC has statutory power to implement this policy change to consider opportunity costs at all, it certainly has the discretionary authority to determine how the costs should be weighed in the balance.

5. Farmland claims that the policy change is not consistent with the legislative history and common law understanding of "public convenience and necessity." Those portions of the legislative history to which petitioner cites, however,

indicate that "public convenience and necessity" must be determined in each case on the basis of the factors that are presented in that instance. *See* H.R.Rep.No.456, 66th Cong., 1st Sess. 146–52 (1919). The policy change does not alter this individual balancing approach. The common law to which petitioner cites indicate only that railroads are quasi-public corporations with attendant public duties. *See* Pet. br. at 14. The status of railroads as quasi-public corporations does not prohibit the ICC from considering opportunity costs when it determines public convenience and necessity.

subsection (3), indicates congressional opposition to use of opportunity costs as a factor in abandonment determinations. Since Congress rejected this factor, the ICC, which is empowered by Congress to enforce the Act, cannot adopt this policy change on its own.

■ We believe that Congress' rejection of the proposed legislation reaffirms the ICC's statutory authority to employ a balancing test when making abandonment decisions. The proposed legislation would have severely limited the ICC's ability to utilize its expertise in deciding abandonment requests. By refusing to curtail the ICC's discretionary authority, Congress implied continued approval of the present balancing test. Because we find that the proposed policy statement does not alter that approach, but rather indicates one additional factor to be considered, we find that this change in policy is not "in excess of [the ICC's] statutory authority."

## V

■ Finally, the State of Illinois argues that the policy statement is arbitrary, capricious, or an abuse of discretion because the ICC failed to explain why it was changing its policy and failed to support its policy with sufficient findings.

The Commission considered comments from numerous interested parties. These comments are discussed within the policy statement. The statement explains that the Commission believed that requiring a railroad to continue service on a rail line without considering opportunity costs imposes a burden on interstate commerce because the railroad has to cross-subsidize the loss of reasonable rate of return from more profitable lines to the line sought to be abandoned. The Commission concluded that "[t]his hidden form of cross-subsidization is highly questionable as a matter of national transportation policy." 45 Fed. Reg. at 4493. This conclusion is consistent with the national transportation policy of "encourag[ing] sound economic conditions in transportation, including sound economic conditions among carriers." 49 U.S.C.

§ 10101(a)(3). Petitioner's argument that the ICC did not explain its reasons for adopting this policy change or support its conclusions with sufficient findings is not persuasive.

## VI

We find that the ICC acted within its statutory power when it issued this policy statement announcing its intention to consider opportunity costs in future abandonment cases. As the Supreme Court noted in *American Trucking Assoc. v. Atchison, Topeka & Santa Fe Ry.*, 387 U.S. 397, 87 S.Ct. 1608, 18 L.Ed.2d 847 (1967):

[T]he Commission, faced with new developments or in light of reconsideration of the relevant facts and its mandate, may alter its past interpretation and overturn past administrative rulings and practices.... In fact, ... this kind of flexibility and adaptability to changing needs and patterns of transportation is an essential part of the office of a regulatory agency. Regulatory agencies do not establish rules of conduct to last forever; they are supposed, within the limits of the law and of fair and prudent administration, to adapt their rules and practices to the Nation's needs in a volatile, changing economy. They are neither required nor supposed to regulate the present and the future within the inflexible limits of yesterday.

*Id.* at 416, 87 S.Ct. at 1618 (citations omitted).

The petitions for review are denied.