BURROUGHS WELLCOME CO., a North Carolina corporation, Appellant,

Pharmaceutical Manufacturers Assoc., The Upjohn Co., Amici Curiae,

v.

Richard S. SCHWEIKER, etc., et al., Appellees,

Generic Pharmaceutical Industry Assoc., Inc., et al., Amici Curiae.

BURROUGHS WELLCOME CO., a North Carolina corporation, Appellee,

v.

Richard S. SCHWEIKER, etc., et al., Appellees,

and

Generic Pharmaceutical Industry Assoc., Inc., Appellant.

Nos. 81–1071, 81–1128.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1981.

Decided May 11, 1981.

Rehearing Denied June 15, 1981.

Alan H. Kaplan, Washington, D. C. (Thomas O. Henteleff, Richard S. Morey, Peter O. Safir, Glenn E. Davis, Peter R. Mathers, Kleinfeld, Kaplan & Becker, Washington, D. C., William M. Sullivan, Kathryn V. Crean, Research Triangle Park, N. C., Ann E. Salitsky, James K. Dorsett, Jr., Michael E. Weddington, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N. C., on brief), for appellant Burroughs Wellcome Co.

Richard Cashman, New York City (Richard A. Givens, Botein, Hays, Sklar & Herzberg, New York City, on brief), for appellant Generic Pharmaceutical Industry Assoc., Inc.

James H. Laskey, Dept. of Justice, Washington, D. C. (Robert B. Nicholson, Dept. of Justice, Washington, D. C., William F. Baxter, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Jeffrey B. Spinger, Acting Chief Counsel, Forrest T. Patterson, Associate Chief Counsel for Enforcement, Food and Drug Administration, Rockville,

Md., on brief), for appellees Schweiker, et al.

Jacob Laufer, New York City, Milton A. Bass, Steven R. Trost, Bass, Ullman & Lustigman, New York City, on brief for National Association of Pharmaceutical Manufacturers.

Joseph E. Meuth, Wills, Green & Meuth, Los Angeles, Cal., on brief, for IMS, Limited.

Stanley L. Temko, Herbert Dym, Terry Coleman, Washington, D. C., on brief, for The Upjohn Company.

Joel E. Hoffman, Robert M. Lichtman, Thomas W. Brunner, Anthony L. Young, Mark S. Fisher, Wald, Harkrader & Ross, Washington, D. C., on brief, for Pharmaceutical Manufacturers Association.

James M. Johnstone, Tom Kirby, III, Philip H. Hecht, Washington, D. C., Kirkland & Ellis, Washington, D. C., Robert G. Pugh, Sr., Robert G. Pugh, Jr., Pugh & Pugh, Shreveport, La., on brief for Boots Pharmaceuticals, Inc.

Before BUTZNER, SPROUSE, and ERVIN, Circuit Judges.

BUTZNER, Circuit Judge:

■ Burroughs Wellcome Company, a pharmaceutical manufacturer, appeals from a judgment of the district court that held that the Food and Drug Administration need not engage in notice and comment rule making before implementing a memorandum concerning approval of new drug applications (NDAs) for generic versions of drugs first marketed after 1962 that are based on reports in the scientific literature to establish the drug's safety and effectiveness. An application for approval on this basis is termed by the industry a "Paper NDA." The district court concluded that the FDA's memorandum concerning its procedure for approving a paper NDA is a general statement of policy and not a rule.

Consequently, the court held that the FDA may implement the procedure set forth in this memorandum without notice and comment rule making under the Administrative Procedure Act, 5 U.S.C. § 553, and it denied Burroughs Wellcome's request for injunctive relief. We affirm.

I

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, provides that new drugs may not be marketed without prior approval of the FDA. 21 U.S.C. § 355(a). Applicants seeking approval must submit an NDA containing "full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use." 21 U.S.C. § 355(b).

Manufacturers of pioneer drugs are required to submit reports of clinical tests and the underlying raw data. 21 C.F.R. § 314.-1(c)12c. Those seeking to market generic versions of drugs first marketed before 1962 may submit an abbreviated NDA (ANDA) if the agency has previously concluded that the product is safe and effective. 21 C.F.R. §§ 310.6, 314.1(f). Abbreviated NDAs consist primarily of a summary of the applicant's methods for manufacturing the drug.

For several years the FDA has discussed the type of procedure it should adopt for approval of generic drugs first marketed after 1962 in order to avoid wasteful duplicative drug testing. In a 1978 memorandum, Dr. Marion Finkel, Associate Director for New Drug Evaluation, instructed her staff to accept published reports as the main supporting documentation for the safety and effectiveness of post-1962 drugs. The memorandum states that the agency "will not interpret the 'full reports of investigations' phrase of [21 U.S.C. § 355(b)] as requiring either case reports or an exhaustive review of all published reports on the drug." [1]

1. The Finkel memorandum contains the following statement for approval of duplicate products of post-1962 drugs:

A drug marketed for the first time after 1962 under an approved New Drug Application may be marketed by a second firm only after the second firm has received the approval of

After exhausting its administrative remedies, Burroughs Wellcome filed this action in district court attacking approval of paper NDAs primarily on the ground that the Finkel memorandum is a rule which can be implemented only after a notice and comment rule making procedure under 5 U.S.C. § 553. The district court found that the paper NDA memorandum establishes no binding norm for future agency treatment of particular NDAs, does not limit the agency's discretion in approving individual NDAs, and has no substantive impact on any right or duty of Burroughs Wellcome. It held that because "the Finkel memorandum merely states agency policy concerning the manner by which the 'full reports of clinical investigations' requirement may be fulfilled in a proper case. . . ," it is a general statement of policy, exempt from the notice and comment rule making provisions of the Administrative Procedure Act, 5 U.S.C. § 553(b)(A). The district court also held that the policy does not offend any published regulation of the FDA.

While this appeal was pending, the FDA stayed implementation of the memorandum to allow review by the new administration. On April 16, 1981, the government announced its decision to implement the memorandum.[2]

## II

Burroughs Wellcome contends that the Finkel memorandum is a rule and can only be implemented through notice and comment rule making. While the Administrative Procedure Act does not define the term "general statements of policy," courts have generally employed two criteria to decide whether an agency pronouncement is a rule or a policy statement. First, a policy statement operates only prospectively, announcing factors that the agency will consider in resolving future substantive questions. *See Farmland Industries, Inc. v. United States*, 642 F.2d 208 at 210 (7th Cir. 1981); *Guardian Federal Savings and Loan Assoc. v. Federal Savings and Loan Insurance Corp.*, 589 F.2d 658, 666 (D.C.Cir.1978). Second, a policy statement must leave the agency free to exercise its discretion and must not establish a "binding norm." It must not be finally determinative of the issues or rights to which it is addressed. *See Assure Competitive Transportation, Inc. v. United States*, 635 F.2d 1301, 1307 n.6 (7 Cir. 1980); *Regular Common Carrier Conference v. United States*, 628 F.2d 248, 251–52 (D.C.Cir.1980). Thus, in distinguishing between substantive and procedural statements in the context of administrative rule making, a court will not hold an agency statement to be a rule unless it "makes a substantive impact on the rights and duties of the person subject to regulation." *Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663, 669 (4th Cir. 1977).

We believe that the district court's conclusion that the Finkel memorandum satisfied these criteria is correct. It is undisputed that the memorandum has only prospective effect. Further, we are persuaded that the memorandum neither creates a binding

a full New Drug Application for that product. Current Agency policy does not permit ANDAs for this purpose. Present interpretation of the law is that no data in an NDA can be utilized to support another NDA without express permission of the original NDA holder. Thus, in the case of duplicate NDAs for already approved post-62 drugs, the Agency will accept published reports as the main supporting documentation for safety and effectiveness. The Agency will not interpret the "full reports of investigations" phrase in the law as requiring either case reports or an exhaustive review of all published reports on the drug. Depending upon the quality of the published data, selected preclinical and perhaps additional clinical studies may be required of the new sponsor prior to NDA approval.

2. Richard S. Schweiker, Secretary of Health and Human Services, stated in part:

The Food and Drug Administration will resume its policy of approving applications for generic versions of certain well-established prescription drugs first approved for marketing after 1962, without requiring the generic manufacturer to repeat the already published studies showing that the drug is safe and effective.

The policy helps conserve limited scientific research resources. It protects patients from unnecessary drug experiments. And it encourages competition—and lower prices—by making it easier for new manufacturers to sell generic versions of well-established drugs whose patents have expired.

norm for future agency conduct nor limits the agency's discretion. The agency retains discretion to require clinical investigations in appropriate cases and to approve or disapprove individual NDAs on a case-by-case basis. *See Farmland Industries, Inc. v. United States, supra,* at 210; *Regular Common Carrier Conference v. United States, supra,* 628 F.2d at 251–52. The paper NDA memorandum simply describes the source of data the agency is willing to consider in future applications without binding the agency to any particular result. The Commissioner has explained that the policy does not bind the agency to rely on any particular report unsupported by raw data, or to approve any particular NDA based only on literature. 45 Fed.Reg. 82060 (Dec. 12, 1980).

█ The district court's finding that the paper NDA policy does not have a substantive impact on the rights or duties of Burroughs Wellcome is also not erroneous. While it is true that the procedure described in the memorandum will likely affect all drug manufacturers, this does not alter the conclusion that it is a general statement of policy. *See Guardian Federal Savings and Loan Assoc. v. Federal Savings and Loan Insurance Corp., supra,* 589 F.2d at 668. The memorandum informs the public prospectively of the manner in which the agency will exercise its discretionary power to approve or disapprove NDAs. It is not a substantive rule because it does not have the force and effect of law. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 301–03, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979); Attorney General's Manual on the Administrative Procedure Act 30 n.3 (1947). Further, the new policy does not alter the obligation of any applicant to submit an NDA containing "full reports of investigations." It clarifies, without substantially altering, existing rights and duties under 21 U.S.C. § 355(b) and 21 C.F.R. § 314.1(c)(2)12. By relying on unpublished reports, the agency does not trench on a pioneer drug manufacturer's trade secrets.

### III

█ Burroughs Wellcome also contends that even if these criteria were met, the district court erred in finding that the paper NDA memorandum is consistent with published regulations of the FDA. It maintains that the policy "is inconsistent with and therefore effectively amends other rules which *were* adopted through notice and comment procedures and which, therefore, can only be validly amended through utilization of those same notice and comment procedures."

Specifically, the company claims that the paper NDA memorandum, which allows reliance on scientific literature, conflicts with 21 C.F.R. § 314.1(c)(2)12c, which requires the applicant to submit reports of all clinical tests sponsored or received by the applicant.

However, § 314.111, dealing with refusal to approve an NDA, permits the agency to waive the prescribed criteria concerning specific clinical investigations in whole or in part if they are not reasonably required when the applicant demonstrates that alternative procedures will yield substantial evidence of effectiveness. The agency therefore retains discretion to determine on a case-by-case basis what procedures are reasonably required for duplicate drugs. Its policy to approve, in appropriate cases, applications solely on the basis of published reports is consistent with the agency's discretion and does not conflict with the regulations.

The company also maintains that the paper NDA policy is inconsistent with 21 C.F.R. § 314.14(e)(2), which states that certain summaries of safety and effectiveness data do not constitute full reports of investigations as defined by 21 U.S.C. § 355(b). They claim that this regulation conflicts with the following paragraph from an attachment to the Finkel memorandum:

Upon approval of the first duplicate NDA, the Summary of Basis for Approval should contain the literature references upon which we relied for approval, together with a description of the studies and, for the clinical studies, how they met 21 CFR 314.111(a)(5)(ii). Succeeding applicants can then use that summary for the preclinical and clinical portions of their NDAs.

226

This paragraph was deleted, however, from a subsequent version of the memorandum released to the public. Based on this evidence, the district court found that Burroughs Wellcome "has not shown that the agency plans to issue such NDAs and the validity of the omitted paragraph is not before the court." We conclude on the record presently before us that this ruling is correct.

We therefore hold, in agreement with the district court, that the paper NDA memorandum is a general statement of policy, not subject to notice and comment rule making and that it is consistent with the published regulations of the FDA. Accordingly, the judgment denying the company's request for injunctive relief is affirmed.

Number 81–1128 is an appeal by the Generic Pharmaceutical Industry Association, Inc., (GPIA) from the district court's denial of its motion to intervene in support of the FDA. We affirm because GPIA's interests are adequately represented by the FDA and the district court did not abuse its discretion in denying intervention. Federal Rule of Civil Procedure 24(a) and (b); 7A Wright & Miller, Federal Practice and Procedure §§ 1909, 1913.

*AFFIRMED.*