Dorothy HERRON, individually, and on behalf of all others similarly situated, Plaintiff,

v.

Margaret M. HECKLER, individually, and as United States Secretary for the Department of Health and Human Services; and the United States Department of Health and Human Services, Defendants.

No. C–82–1230 WHO.

United States District Court, N.D. California.

Oct. 31, 1983.

Terrance Lee Hancock, Senior Citizens' Legal Services, Santa Cruz, Cal., for plaintiff.

Joseph Russoniello, U.S. Atty., John Barg, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

This suit presents a challenge to certain "staff instructions" contained in the claims manual of the Social Security Administration ("SSA"), which instructions limit the type of property that may be disregarded in determining an applicant's eligibility for Supplemental Security Income ("SSI") benefits. Plaintiff is a former SSI beneficiary whose benefits were terminated because the value of her property exceeded a limitation prescribed in the claims manual. She seeks to represent a nationwide class of past, present, and future SSI beneficiaries similarly situated. Defendants are the De-

partment of Health and Human Services ("HHS") and its Secretary.[1] Now pending before the Court are plaintiff's motion for class certification and the parties' cross-motions for summary judgment. For the reasons set forth below, the Court denies plaintiff's motion for class certification, denies defendants' motion for summary judgment, and grants plaintiff's motion (individually) for summary judgment.

## I

Plaintiff is an eighty-one year old woman who, in March, 1980, was receiving SSI benefits and living in her own home. On March 12, 1980, she was forced to move to a board and care facility because she was no longer able to care for herself. In August, 1980, plaintiff's son, acting as her conservator, received permission from the Superior Court for the County of Santa Cruz to sell plaintiff's home, which had become uninhabitable and of no use to her. In November, 1980, plaintiff used the proceeds from the sale of her house to purchase a mobile home for $18,200. She immediately rented this property. The net proceeds from the lease have been applied toward the cost of plaintiff's care at the board and care facility since that time.

On December 24, 1980, the SSA sent a notice to plaintiff informing her that she was no longer eligible for SSI benefits, because her resources (i.e., her mobile home) exceeded the $1,500 limit for single individuals. 42 U.S.C. § 1382(a)(1)(B). Plaintiff asked that the SSA reconsider its determination. The initial determination was upheld in the SSA's Notice of Reconsideration dated February 5, 1981. In that Notice, the SSA found that plaintiff's equity in her mobile home exceeded the claims manual nonhome equity limitation challenged herein;[2] that such equity above the

1. Margaret M. Heckler has succeeded Richard Schweiker as Secretary of the Department of Health and Human Services. Accordingly, the Court *sua sponte* changes the instant case caption to "Margaret M. Heckler, individually and

as United States Secretary for the Department of Health and Human Services."

2. The claims manual provision in question contains two limitations to property that must be disregarded in determining SSI eligibility: the property must generate a net annual rate of

claims manual limitation ("additional equity") was to be applied toward the $1,500 statutory resource limit; and that, as such additional equity exceeded the statutory limit, plaintiff was not entitled to SSI benefits.

Plaintiff requested an administrative hearing to challenge the SSA's determination that only $6,000 (the limitation prescribed in the claims manual), and not her total equity in the mobile home, was exempt for purposes of determining her eligibility for SSI benefits. At the hearing plaintiff argued that the claims manual limitation conflicted with applicable statutes and regulations governing the disbursement of SSI benefits. The administrative law judge affirmed the SSA's decision, finding that the Social Security Act authorized the Secretary to determine which property is essential to the self-support of SSI beneficiaries (and, therefore, exempt for purposes of determining SSI eligibility), and that he had done so in promulgating the claims manual limitations.

Plaintiff then filed this suit, alleging four causes of action: (1) defendants' failure to publish the claims manual limitations in the Federal Register violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.;* (2) defendants' failure to publish the claims manual limitations in the Federal Register violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; (3) the claims manual limitations conflict with applicable statutes and regulations; and (4) such conflict, and the failure to publish the limitations in the Federal Register, violated the Due Process Clause of the Fifth Amendment.

The parties' cross-motions for summary judgment followed six months thereafter. The Court heard argument and took these motions and plaintiff's motion for class certification under submission.

In this Opinion the Court first considers plaintiff's motion for class certification, and then the parties' cross-motions for summary judgment.

## II

Plaintiff seeks to certify a class of SSI beneficiaries defined as follows:

"SSI recipients or applicants in the United States of America who have been, are being, or will be denied SSI benefits by the SSA because their equity value in property essential to their means of self-support exceeds $6,000, or because the annual rate of return on their equity value in such property is less than 6%."

The Court finds below that it lacks subject matter jurisdiction to entertain the claims of the proposed class.

The jurisdictional basis for class suits of this nature is narrowly circumscribed. This suit arises under the general judicial review provision of the Social Security Act, 42 U.S.C. § 405(g).[3] Prior to

---

return of at least 6 percent *and* the owner's equity in the property must not exceed $6,000. *See* full text of provision at p. 228 *infra*. Plaintiff's mobile home fell within the first limitation (generating a net annual rate of return of 9.8 percent), but not within the second. Plaintiff seeks to challenge both limitations herein. Defendants argue that plaintiff lacks standing to challenge the first limitation because she was not adversely affected by it. This Court disagrees. The limitations are contained in a single regulatory provision and connected by the conjunction "and." On its face then, the provision suggests that the two limitations are to be construed and applied jointly. Plaintiff failed to qualify under the provision as a whole and, accordingly, retains the standing to challenge the provision as a whole. Defendants offer no argument or authority to suggest that the limitations were meant to function separately.

**3.** Section 405(g) of the Social Security Act provides in relevant part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, * * * may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States in which the plaintiff resides, or has his principle place of business * * *."

Plaintiff also invokes this Court's jurisdiction under 28 U.S.C. §§ 1331 (federal question), 2201 (declaratory judgment), and 2202 (injunction). Section 405(h) of the Social Security Act precludes resort to federal question jurisdiction for the adjudication of claims for social security benefits. *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Wein-*

1979 there was some question as to whether this statute, providing for court review of administrative determinations in *individual* cases, establishes a jurisdictional basis for class action suits as well. In 1979 the Supreme Court of the United States held that § 405(g) does provide a jurisdictional basis for class action suits *so long as* membership. in the class is limited to individuals meeting the statute's procedural requirements. *Califano v. Yamasaki*, 442 U.S. 682, 698–701, 99 S.Ct. 2545, 2556–2557, 61 L.Ed.2d 176 (1979). These procedural requirements are threefold: (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court, in general that of the plaintiff's residence or principal place of business. *Weinberger v. Salfi*, 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975) (hereinafter cited as "*Salfi* requirements"). *See also Norton v. Mathews*, 427 U.S. 524, 536, 96 S.Ct. 2771, 2777, 49 L.Ed.2d 672 n. 4 (1976), *cited in Yamasaki, supra*, 442 U.S. at 701, 99 S.Ct. at 2557.

■ The prospective class members herein fail to meet the first of the *Salfi* requirements, that of "finality." [4] "Finality" consists of two elements: (1) a claim

for benefits must have been presented to the Secretary, and (2) the administrative remedies prescribed by the Secretary must have been exhausted. *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1979). Plaintiff argued at the administrative hearing below only that the claims manual limitations in question conflicted with applicable statutes and regulations governing the disbursement of SSI benefits. Neither the named plaintiff, nor therefore the proposed class members, submitted their APA, FOIA, or Fifth Amendment arguments to the Secretary during the administrative proceedings below.[5] Thus, it is clear that, at least with respect to these contentions, plaintiff failed to exhaust her administrative remedies.[6]

■ There are some circumstances, however, under which the court may disregard the exhaustion element and assume jurisdiction of the case notwithstanding plaintiff's failure to avail himself or herself entirely of the administrative process. Plaintiff contends that two such circumstances justify a "court-imposed waiver" of the exhaustion element in this case: (1) plaintiff has stated a colorable constitutional challenge to the claims manual limitations in question, and (2) plaintiff has stated a statutory challenge on which the Secretary has taken a final position.

---

berger v. Salfi, 422 U.S. 749, 761, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975). Moreover, the declaratory judgment/injunction sections of the Judiciary Act simply create remedies; they are not independent bases for federal jurisdiction. *Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 671–74, 70 S.Ct. 876, 878–80, 94 L.Ed. 1194 (1950); *California Dump Truck Owners Association v. Associated General Contractors of America*, 562 F.2d 607, 609 n. 1 (9th Cir.1977). Accordingly, § 405(g) provides the only jurisdictional basis for the relief requested herein.

**4.** The Court expresses no opinion concerning the proposed class' compliance with the remaining *Salfi* requirements.

**5.** Plaintiff alleges in her complaint that she argued (only) that the claims manual limitations conflicted with the applicable statute and regulations, and not that their promulgation violated the APA and/or the FOIA. *See* Complaint pp. 6–7 ¶ 6.7. The full record of the administrative

proceedings below contains no reference to the APA or the FOIA.

**6.** Plaintiff's failure to submit her APA, FOIA, and Fifth Amendment "claims" to the Secretary might be construed to violate the first (presentation) element of "finality" as well. The presentation element is nonwaivable by the Court or by the Secretary. *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1979). However, the type of "claim" that must be presented to the Secretary under *Salfi* is a claim of *entitlement* to or a *request* for benefits, not a claim for relief or cause of action as the term is generally understood. *Id.* at 329, 96 S.Ct. at 900. "Claim" so construed, the presentation element may be satisfied, as it was in this case, by the simple act of filing an application with the Secretary. *Id.* This construction of "claim" is significant in this case, in light of the Court's determination at page 227 *infra* that plaintiff's case individually is properly before the Court.

**A**

Plaintiff first argues, on the authority of *Mathews v. Eldridge, supra,* and its progeny, that the proposed class members and she are entitled to a waiver of the exhaustion element because she raises a colorable constitutional challenge to the claims manual limitations. In *Eldridge,* the Supreme Court held that a district court retained jurisdiction under § 405(g) to hear a constitutional challenge to certain agency procedures despite the plaintiff's failure to raise or exhaust his constitutional claim with the Secretary prior to filing suit. 424 U.S. at 329–30, 96 S.Ct. at 900. The Court found that the purported deprivation of constitutional rights at issue could not be redressed at a post-deprivation hearing, through the payment of retroactive benefits; accordingly, the Court concluded that plaintiff's need for a prompt resolution of the dispute was too great to await a "final" decision of the Secretary. *Id.* at 330–31, 96 S.Ct. at 900–01.

The Court expanded on its decision in *Eldridge* one year later in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). There, the Court observed:

"Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. Furthermore, since federal-question jurisdiction under 28 U.S.C. § 1331 is precluded by § 205(h), a decision denying § 205(g) jurisdiction in *Salfi* or *Eldridge* would effectively have closed the federal forum to the adjudication of *colorable constitutional claims.* Thus those cases merely adhered to the well-established principle that when constitutional questions are in issue, the availability of judicial review is

presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence."

*Id.* at 109, 97 S.Ct. at 986 (citation omitted, emphasis added). Subsequently, the courts have read *Eldridge* to relieve claimants of the exhaustion element when they state a "colorable" claim of constitutional deprivation. *See, e.g.,* *Jones v. Califano,* 576 F.2d 12, 18 (2d Cir.1978).

Plaintiff fails to demonstrate that her constitutional claim (or that of the proposed class) is "colorable," so as to fall within this exception to the exhaustion element. She alleges in her complaint that the claims manual limitations "were promulgated by defendants without public notice and thereby deny SSI benefits to otherwise eligible individuals in violation of the due process clause of the Fifth Amendment * * *." Complaint ¶ 9.4, p. 11. She further alleges that the limitations "unlawfully conflict with the governing federal statutes and regulations in violation of the due process clause of the Fifth Amendment * * *." *Id.* at p. 12. These allegations are conclusory; standing alone, they do not justify a finding that plaintiff's claim is "colorable."[7] Plaintiff offers *no* argument or case authority to sustain her claim of constitutional deprivation. Neither her two memoranda in support of summary judgment nor her initial memorandum in support of class certification contain any mention whatsoever of constitutional violations.[8]

Moreover, the exhaustion element cannot be waived, even in the face of a "colorable" constitutional claim, where plaintiff raises for the first time in court statutory claims on which the Secretary might have ruled in plaintiff's favor. *Mu-*

---

**7.** The failure to publish notice of proposed regulations, or the promulgation of regulations in conflict with governing statutes, may constitute *statutory* violations, but such practices on their face do not appear to rise to the level of constitutional deprivations.

**8.** Plaintiff's closing memorandum in support of class certification simply reiterates the broad allegations of her complaint that "the Claims Manual Restrictions violate the due process clause of the Fifth Amendment to the United States Constitution." Plaintiff's response to defendants' memorandum in opposition to motion for class certification at p. 8.

*rillo v. Mathews,* 588 F.2d 759, 761 (9th Cir.1978). Here, plaintiff raises two new statutory claims under the APA and the FOIA on which the Secretary, given the opportunity, could have ruled in her favor. Consequently, the Court cannot disregard the exhaustion element herein in order to assume jurisdiction over plaintiff's purported constitutional claim.

B

Plaintiff next argues, on the authority of *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333 (3d Cir.1977), that the proposed class members and she are entitled to a waiver of the exhaustion element because she asserts a statutory claim (*i.e.,* the alleged conflict between the claims manual limitations and the governing statute and regulations) on which the Secretary has taken a definitive position.

*Liberty Alliance* extends the exhaustion exception created in *Eldridge* to statutory claims asserted in the context of a class action suit. There, the Secretary, relying on a particular construction of the Social Security Act, refused to disregard certain income in calculating benefits for blind SSI beneficiaries. The named plaintiffs exhausted their administrative remedies and then filed suit in district court, on behalf of themselves and others similarly situated, alleging that the Secretary's construction of the Act was erroneous. The district court denied plaintiff's motion for class certification, finding that the unnamed class members had not exhausted their administrative remedies. The Court of Appeals reversed, holding in effect that the claims of the unnamed class members had been exhausted before the Secretary by the named plaintiffs. The court relied on Justice Rehnquist's reasoning in *Weinberger v. Salfi, supra* (sustaining a waiver by the Secretary of the exhaustion requirement):

"Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefits of its experience and expertise, and to compile a record which is adequate for judicial review. * * * Once a benefit applicant has presented his or her claim at a sufficiently high level of review to satisfy the Secretary's needs, further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by an administrative or judicial interest.

*Liberty Alliance, supra,* 568 F.2d at 344–45 (emphasis omitted), *citing* 422 U.S. at 765–66, 95 S.Ct. at 2466–67. Applying this reasoning to the case before it, the court found that there was no purpose in compelling multiple claimants to present an identical issue to the Secretary on which he had already taken a definitive position. *Id.* at 345. The court adopted the following test of exhaustion from its analysis of the case: "The test for exhaustion of a statutory issue in an individual case, we believe, should be whether the secretary has taken a final position *on that issue.*" *Id.* at 346 (emphasis added).

*Liberty Alliance* is distinguishable from this suit in one respect fatal to plaintiff's argument. *Liberty Alliance* concerned a *single* statutory cause of action, fully considered and decided by the Secretary during the administrative proceedings. The instant suit concerns *three* statutory causes of action, only one of which was considered by the Secretary during the proceedings below. Thus, the central premise underlying *Liberty Alliance*—that the Secretary had taken a final position on the only issue(s) before the court—is inapplicable in this case.

The instant suit is more closely akin to *Murillo v. Mathews, supra.* In *Murillo* the Ninth Circuit held that it would have been improper for a district court to assume jurisdiction under § 405(g) of a complaint containing statutory and constitutional claims, where the statutory claims had not been presented to the Secretary during the administrative proceedings. 588 F.2d at 761. The court found that the Secretary could have met plaintiffs' objec-

tions by a decision on the nonconstitutional issues (thus precluding the need for constitutional adjudication) had they raised the issues at the administrative hearing. Accordingly, resort to the administrative process was not presumptively "futile," in the words of Justice Rehnquist in *Salfi*,[9] and waiver of the exhaustion requirement was not warranted. *Id.* at 763–64, 95 S.Ct. at 2465–66.

Similarly, the Secretary might have met plaintiff's objections herein had she submitted her APA and FOIA claims to him prior to filing this suit. Consequently, the Court cannot disregard the exhaustion element to reach the remaining statutory claim on which the Secretary admittedly has rendered a "final" decision.

### C

■ The Court finds, notwithstanding the discussion above concerning the *class* claims, that the Secretary has waived the exhaustion element as to the named plaintiff's *individual* claims. Plaintiff alleges in her complaint that no further administrative review of her case is available, and the Secretary admits this allegation in her answer. *See* Complaint ¶ 6.9, p. 8; Answer ¶ 3, p. 1. Furthermore, the Secretary does not contest plaintiff's compliance with the exhaustion element in any of the briefs filed in support of her summary judgment motion or in opposition to plaintiff's class certification motion. Under analogous circumstances, the Supreme Court held in *Salfi*, *supra*, 422 U.S. at 767, 95 S.Ct. at 2467:

"In the present case the Secretary does not raise any challenge to the sufficiency of the allegations of exhaustion in appellees' complaint. We interpret this to be a determination by him that for the purposes of this litigation the reconsideration determination is 'final.' The named

appellees thus satisfy the requirements for § 405(g) judicial review * * *."

Similarly, this Court construes the Secretary's failure to challenge plaintiff's exhaustion allegations to be a determination that her decision below, as to all claims presented herein by plaintiff, is "final."[10] Accordingly, the Court shall proceed to the merits of the parties' cross-motions for summary judgment.

### III

Plaintiff raises three arguments in support of her summary judgment motion paralleling the first three causes of action in her complaint: defendants' failure to publish the claims manual limitations in the Federal Register violated (1) the APA, and (2) the FOIA, and (3) the claims manual limitations conflict with the applicable statute and regulations governing the disbursement of SSI benefits. For the reasons stated below, the Court finds that plaintiff is entitled to summary judgment on her APA and FOIA claims. The Court first reviews the applicable statute, regulations, and claims manual provisions in dispute in Section A below. It then considers the merits of plaintiff's APA and FOIA claims in Sections B and C, respectively.

### A

Eligibility for SSI benefits is grounded on the income and resources available to an applicant. In order to be eligible for benefits a single (*i.e.*, unmarried) individual generally cannot own resources collectively totaling more than $1,500. 42 U.S.C. § 1382(a). Congress, however, has chosen to exempt certain resources from the $1,500 limitation. Under one such exemption pertinent to this case, resources deemed essential to an applicant's means of self-support must be disregarded in determining his or her eligibility for SSI benefits.

---

9. *See* p. 226 *supra.*

10. Such constructive waiver of the exhaustion element does not extend to the class claims. By denying the class allegations of the complaint in their answer (*see* complaint pp. 3–4 ¶ 4; answer to complaint p. 1 ¶ 2), defendants negated any

suggestion that such waiver was to operate on a class-wide basis. Accordingly, they preserved their right to demand of the proposed class members full exhaustion of administrative remedies.

"In determining the resources of an individual (and his eligible spouse, if any) there shall be excluded—

\* \* \* \* \* \*

(3) other property which, as determined in accordance with and subject to limitations prescribed by the Secretary, is so essential to the means of self-support of an individual (and such spouse) as to warrant its exclusion \* \* \*."

42 U.S.C. § 1382b(a)(3).

In order to implement this general statutory provision the Secretary has established certain guidelines and requirements in the applicable regulations and claims manual provisions. One such regulation defines in general terms "other" (*i.e.*, non-business) property essential to self-support:

"In determining the resources of an individual (and spouse, if any) there shall be excluded nonliquid property \* \* \* which although not used in a trade or business is essential to the self-support of the individual (and spouse, if any). Nonbusiness property is considered essential for self-support if it is relied upon by an individual as a significant factor in producing income on which he can live, it is used to produce goods essential to the support of the individual, or it is used to provide services essential to the individual's support."

20 C.F.R. § 416.1224(a). Another regulation issued by the Secretary sets forth a requirement that property subject to exemption must generate a reasonable amount of income.

"In determining the resources of an individual \*.\* \* \* there shall be excluded \* \* property so essential to the self-support of the individual \* \* \* as to warrant its exclusion. Such property shall include both the property used in a trade or business \* \* \* and property not used in a trade or business but which nevertheless produces income \* \* \*."

20 C.F.R. § 416.1220. These two regulations are significant herein because plaintiff claims that she has met their requirements, and that any further restrictions in the claims manual conflict with these regulations.

In addition to the above regulations, the Secretary has prescribed certain "guidelines" in the SSA claims manual, two of which are most relevant to the instant suit. Section 12600 of the claims manual provides as follows:

"In determining an individual's eligibility for payments, property \* \* \* owned by the individual \* \* \* which is essential to the means of self-support of the individual \* \* \* is, subject to limitations, excluded from being counted as a resource."

Section 12605 of the claims manual further provides:

"Nonhome property that is used in a business or nonbusiness self-support activity is excluded from resources when the individual's \* \* \* equity in the property does not exceed $6,000 and the activity produces a net annual return of at least 6 percent of the excludable equity value. \* \* \* As of November 1, 1979, if a net return of 6 percent on $6,000 is shown on an income-producing property(ies) but equity in the property(ies) exceeds $6,000, the excess equity (property value less $6,000) is a countable resource and applied towards the statutory resource limits ($1,500/$2,250)."

On the basis of § 12605 quoted above, the Secretary terminated plaintiff's SSI benefits.

**B**

Plaintiff first argues that defendants' failure to comply with the notice and comment provisions of the APA renders the claims manual limitations in question void and unenforceable. She bases her argument on § 553(b) of the Act, which provides as follows:

"General notice of proposed rule making shall be published in the Federal Register, \* \* \*. The notice shall include—

(1) a statement of the time, place, and nature of the public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved."

The Secretary responds that the APA did not mandate prior publication of the claims manual limitations because: (1) the Secretary is not bound by the publication provisions of the APA; (2) the claims manual limitations are not "rules" within the terms of the APA; and (3) if the limitations are "rules" within the meaning of the APA, they are "interpretative rules" exempt from the publication requirement.[11] The Court considers each of these contentions in turn.

1

The APA contains a provision that ordinarily would exempt the Secretary from its rule-making procedures. Section 553(a)(2) of the APA states in relevant part: "This section applies, according to the provisions thereof, except to the extent there is involved—a matter relating to agency management or to personnel or to * * * *grants* [or] *benefits* * * *." (Emphasis added.) Notwithstanding this statutory exemption, the Secretary elected to abide by the provisions of the APA in a "Statement of Policy" published in the Federal Register on January 28, 1971. 36 Fed.Reg. 2532 (1971). The parties dispute the nature of the Secretary's obligations under the APA in light of this statement.

Plaintiff urges that, notwithstanding the statutory exemption, the Secretary is legally bound to the APA's notice and comment provisions by his statement of policy. She cites cases in which HHS regulations have been held to strict compliance with the notice requirements of the APA. *National Welfare Rights Organization v. Mathews*, 533 F.2d 637, 646 (D.C.Cir.1976); *Buschman v. Schweiker*, 676 F.2d 352, 355–58 (9th Cir.1982). *See also Rodway v. United States Department of Agriculture*, 514 F.2d 809, 814 (D.C.Cir.1975) (concerning similar USDA policy statement).

The Secretary asserts that her obligations under the APA remain discretionary, because "statements of policy," unlike rules or regulations, do *not* create binding legal obligations. *See Texaco, Inc. v. Federal Trade Commission*, 412 F.2d 740, 744 (3d Cir.1969).

The Court finds that plaintiff cites the more persuasive authority. Defendants present *no* argument or authority to show that their "statement of policy" (so designated by the Secretary) does not in fact create binding legal obligations.[12] Plaintiff, on the other hand, cites authority directly on point indicating that the "statement of policy" in question legally binds the Secretary to the provisions of the APA. *Eldridge, supra*, 533 F.2d at 646; *Buschman, supra*, 676 F.2d at 356 n. 4. This Court perceives no reason to depart from this authority. Accordingly, the Court finds that the Secretary was bound by the

---

**11.** The Secretary does not contest the allegation that she in fact failed to publish the claims manual limitations in accordance with the APA's notice and comment provisions.

**12.** Defendants' reliance on *Texaco, Inc. v. Federal Trade Commission*, 412 F.2d 740 (3d Cir. 1969), is misplaced. *Texaco* concerned the validity of a Federal Power Commission general order issued without regard to the provisions of the APA. Plaintiff argued that the order was a "rule" subject to the notice and comment provisions of the APA. The Commissioner argued that the order was a general "statement of policy" exempt from the APA's provisions. The Court adopted the following principle to resolve the issue: rules create substantive rights and obligations while statements of policy do not. The court thereon construed the general order before it to confer substantive rights and obliga-

tions on the parties and, accordingly, found the order to fall within the rubric of "rule."

Defendants misread *Texaco* to suggest that the legal effect of an administrative directive may be determined by its character (*i.e.*, however it is characterized by administrative officials) while in fact the case suggests the *converse* of this proposition: the character of an administrative directive may be determined by its substance and effect. This latter proposition is consistent with the law of the Ninth Circuit. *See Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir.1977). ("This court must inquire into the substance and effect of the [administrative] policy pronouncement. The label attached is not controlling.") Defendants mistakenly rely solely on the January 1971 directive's label—"statement of policy"—to argue that it carries no binding legal effect.

provisions of the APA when she promulgated the claims manual limitations at issue.[13]

2

The Secretary contends that the claims manual limitations at issue are not "rules" subject to the notice and comment provisions of the APA.

Section 551(4) of the APA defines "rule" as follows:

" '[R]ule' means the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency * * *."

The claims manual provisions clearly fall within the definition of "rule" quoted above: they are an agency statement; they are applicable prospectively to a class of SSI beneficiaries generally and to the named plaintiff particularly; and by defendants' own admission in their memoranda, they are designed to implement, interpret and/or prescribe law.[14] Moreover, the claims manual provisions are "rules" as the term generally has been construed by the courts: they declare policies generally binding on the affected public; they provide specific standards to regulate future actions of the affected public; and they make a substantive impact on the rights and duties of persons subject to their limitations. *See PBW Stock Exchange, Inc. v. Securities & Exchange Commission*, 485 F.2d 718, 732 (3d Cir.1973); *Burroughs*

*Wellcome Co. v. Schweiker*, 649 F.2d 221, 224 (4th Cir.1981).

Defendants argue that the claims manual limitations are "staff instructions" published and distributed internally to SSA employees to guide them in the administration of the SSI program. They fail by this argument, however, to controvert the fact that such internal instructions (assuming the accuracy of this characterization) nevertheless fall within the above-cited definitions of "rule."

Defendants' reliance on *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981), is misplaced. The Court did not purport to construe the claims manual within the terms of the APA, because the Act was not at issue. Moreover, the Court considered the effect of the claims manual on the Secretary, not on the public; "rules" are so characterized under the APA in accordance with their effect on the public. *See PBW Stock Exchange, Inc., supra; Burroughs Wellcome Co., supra.*

3

Defendants argue in the alternative that the claims manual limitations are "interpretative rules" expressly exempt from the public notice provisions of the APA. They rely on § 553(b)(A) of the APA which provides:

"Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, practice or procedure * * *."

---

**13.** The Secretary further argues that she undertook the APA notice and comment provisions voluntarily; that therefore, they are not, as to her, "procedures required by law"; that the APA's judicial review provision (5 U.S.C. § 706(2)(D)) authorizes courts to set aside only those regulations promulgated in neglect of "procedure[s] required by law"; and that therefore, this Court lacks jurisdiction to strike the claims manual limitations at issue.

The Court finds the argument without merit. It's jurisdiction arises under the judicial review provision of the Social Security Act, not of the APA. *See* note 3, *supra*. Defendants cite no authority suggesting that the Court's jurisdiction

under § 405(g) is in any way limited by the APA. Moreover, and in any case, this Court construes defendants' 1971 statement of policy to be a *waiver* of their statutory exemption from the obligations of the APA. Such waiver operates to impose on the Secretary the APA's notice and comment provisions, *e.g.*, "procedures required by law." That the Secretary's undertaking was voluntary affirms, rather than contradicts, the binding legal effect of the waiver, because waivers by definition must be voluntary.

**14.** *See, e.g.*, defendants' memorandum in support of motion for summary judgment, p. 15.

██ The meaning of "interpretative rule" has developed through the case law in lieu of statutory definition. "Interpretative rules" are an administrative construction of a statutory provision on a question of law reviewable in the courts. *Pickus v. United States Board of Parole*, 507 F.2d 1107, 1113 (D.C.Cir.1973). They clarify and explain existing law or regulations, *Gosman v. United States*, 573 F.2d 31, 39 (Ct.Cl.1978), and have neither force of law nor a substantial impact on those regulated. *See National Nutritional Foods Association v. Weinberger*, 512 F.2d 688, 696–97 (2d Cir.1975); *Saint Francis Memorial Hospital v. Weinberger*, 413 F.Supp. 323, 328 (N.D.Cal.1976). The term is most clearly defined in contradistinction to "substantive" or "legislative" rules:

> "[S]ubstantive rules or legislative rules are those which *create* law * * *, whereas interpretative rules are statements as to what the administrative officer thinks the regulation means."

*Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331–32 (D.C.Cir.1952); *see also National Association of Insurance Agents, Inc. v. Board of Governors*, 489 F.2d 1268, 1270 (D.C.Cir.1974).

The claims manual limitations at issue clearly fall within the rubric of "substantive" rule, and not "interpretative" rule. They do not simply set forth the Secretary's opinion as to what the governing statute and regulations "mean"; they create precise, objective limitations where none existed before. The claims manual provisions contain language not found in the governing statute and regulations—the concepts of equity value and rate of return on investment have no basis in the governing legislation. Accordingly, the limitations cannot be said to "construe" the provisions of the statute and regulations.

Moreover, the Secretary clearly treated the claims manual provisions as substantive regulations in deciding plaintiff's case. She relied solely on the provisions to deny plaintiff her benefits and cited them as binding authority for her decision. Indeed, she even referred to the limitations as "regulations" in her Notice of Reconsideration.[15] The Secretary failed to consider any of the facts of plaintiff's case, other than the equity value of her property, to determine whether, notwithstanding the claims manual limitations, plaintiff's case fell within the broader terms of the statute or regulations. She in essence treated the limitations as standards in and of themselves to be met by plaintiff. Clearly then, the claims manual provisions did not simply "provide guidance," as defendants suggest; they, like regulations, dictated a narrow, mechanical result.

Further still, as defendants argue throughout their memoranda, the Secretary promulgated the claims manual provisions at issue pursuant to her authority under § 1382b(a)(3)[16] to prescribe limits to the resources that may be excluded in determining SSI eligibility. Clearly, Congress expected any such limitations so prescribed to be substantive regulations binding as law upon the affected public. Congress could not have meant simply to authorize the Secretary to issue "interpretative" rules: because the Secretary already retains the authority to issue interpretative rules, any specific authorization here would have been superfluous. Thus, Congress must have intended the Secretary to create law, to create substantive limitations that, for whatever reason, it chose not to prescribe itself.

Finally, defendants' construction of "interpretative rule," as applied in this case, would strip the APA of any force: all administrative agencies easily could circumvent the provisions of the APA by promulgating substantive rules or eligibility requirements in internal "staff manuals" and designating them to be policy statements or interpretative rules. The Court declines to promote such a practice.

4

██ Plaintiff asserts as an additional ground for relief under the APA the "sub-

**15.** *See* Complaint, Exhibit A.

**16.** *See* text of statute at pp. 12–13, *supra*.

stantial impact" of the claims manual limitations on the affected public.

The "substantial impact" principle is of relatively recent origin in the case law. The concept first arose in *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2d Cir. 1972), wherein the court minimized the importance of distinguishing "substantive" rules from "interpretative" rules in determining administrative obligations under the APA; the court concluded that such obligations arise instead by virtue of the "substantial impact" of an administrative directive on the affected public. *Id.* at 482. Since the *Lewis-Mota* decision, several courts, including a court in this district, have adopted the "substantial impact" principle as articulated therein. *See Rivera v. Patino*, 524 F.Supp. 136, 148–49 (N.D.Cal. 1981), *and cases cited therein*. Still, as defendants observe in their memorandum, the substantial impact principle has been the subject of some criticism. *See, e.g., Energy Reserves Group v. Department of Energy*, 589 F.2d 1082, 1093–98 (Emer.Ct. App.1978). The gist of the criticism is to the effect that all rules, interpretative or otherwise, have an impact on those toward whom they are directed. Accordingly, under the substantial impact principle, all rules become substantive legislation by virtue of their effect. *Id.* at 1094–95.

Though the criticism in *Energy Reserves* is to some extent well taken,[17] the Court concludes that the weight of the authority rests with plaintiff. Accordingly, the Court finds merit in plaintiff's "substantial impact" claim under the APA. The claims manual limitations at issue clearly have had a substantial impact on the affected public. Claimants, such as plaintiff, who otherwise by statute and regulation qualify for SSI benefits, are being denied such benefits solely because their resources do not fall within the specific limitations contained in the claims manual. Moreover, because the limitations affect eligibility for, rather than calculation of, SSI benefits,

their impact on the affected claimants could not be greater: they operate to deny claimants *all* benefits.

Defendants argue that the claims manual limitations do not have a substantial impact on plaintiff or others because they do not change existing rights and obligations. This Court disagrees. The limitations convert the broad, essentially subjective, standard of resource-dependence set forth in the governing statute and regulations into a narrow, specific, objective standard amendable to wholesale application. As a consequence, those claimants who could come forward with additional evidence of their actual dependence on a particular resource are barred from doing so. This result marks a substantive change in claimants' rights and obligations under the governing statute and regulations.

**5**

[20] In sum, the Secretary was required, by the express terms of the APA and the "substantial impact" principle, to notify the public and to solicit comments before she promulgated the claims manual limitations at issue here. Her failure to comply with the notice and comment provisions of the APA renders the challenged limitations void and unenforceable. *Rivera, supra*, 524 F.Supp. at 149; *Hotch v. United States*, 212 F.2d 280 (9th Cir.1954); 5 U.S.C. § 706(2)(D).

**C**

Plaintiff states her second cause of action under the FOIA. She contends that the Secretary's continuing failure to publish the claims manual limitations in the Federal Register violates § 552(a)(1)(D) of the Act, which provides in relevant part:

> "Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—
>
> *   *   *   *   *   *
>
> (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or inter-

---

**17.** *Energy Reserves Group v. Department of Energy*, 589 F.2d 1082 (Emer.Ct.App.1978), fails, however, in this Court's opinion, to give suffi-

cient consideration to the concept of "substantiality" underlying the substantial impact principle.

pretation of general applicability formulated or adopted by the agency."

Plaintiff further argues, for reasons discussed above with respect to the APA, that the claims manual limitations are either "substantive rules of general applicability," "statements of general policy," and/or "interpretation[s] of general applicability" within the terms of the above-quoted provision.

Defendants respond that their responsibilities under the FOIA extend only so far as making the limitations available to the public for inspection. They resort to § 552(a)(2)(C) of the Act, which provides:

> "Each agency, in accordance with published rules, shall make available for public inspection and copying—
>
> \*  \*  \*  \*  \*  \*
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public \* \* \*."

As the claims manual limitations at issue clearly fall within *both* provisions quoted above, the statute does not readily define the scope of the Secretary's FOIA obligations. The Ninth Circuit, however, under similar circumstances, has held that administrative officials must publish, regardless of its characterization under the Act, any administrative directive "of general applicability." *Anderson v. Butz,* 550 F.2d 459, 463 (9th Cir.1977). An administrative directive is deemed *not* to be of general applicability if: (1) only a clarification or explanation of existing law or regulations is expressed, and (2) no significant impact upon any segment of the public results. *Id.*

This Court has found previously, for reasons set forth in Section IIIB, *supra,* of

this Opinion, that the claims manual limitations create (rather than clarify) new law and substantially affect the rights of a particular class of SSI claimants. Based thereon, the Court further finds that the limitations are administrative directives "of general applicability" as defined in *Anderson.* Accordingly, the Secretary is and has been under a continuing obligation to publish the limitations in the Federal Register under the terms of the FOIA. Her failure to do so renders the claims manual provision void. *Anderson, supra,* 550 F.2d at 462; 5 U.S.C. § 552(a).

### IV

The Court has determined, for the reasons set forth above, that defendants wrongfully and unlawfully terminated plaintiff's SSI benefits on the basis of a claims manual provision that is void and unenforceable under the terms of the APA and the FOIA.[18] It follows therefrom that defendants must immediately reinstate plaintiff to the SSI program and restore to her all benefits that have accrued since the date of her unlawful termination. The Court finds that an order declaring the claims manual provision void, and enjoining defendants from enforcing it against plaintiff in the future, is appropriate.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for class certification is DENIED.

2. Defendants' motion for summary judgment is DENIED.

3. Plaintiff's motion for summary judgment is GRANTED. The Secretary's final decision of January 26, 1982, is reversed and vacated.

---

**18.** The Court finds that plaintiff's remaining statutory claim for relief—the claims manual limitations conflict with the applicable statute and regulations—is meritless. In essence, plaintiff argues that, because she meets the terms of the statute but not the specific limitations prescribed in the claims manual, the two sets of requirements must be inconsistent. This Court disagrees. The statute expressly authorizes the Secretary to place further restrictions on the type of property that may be disregarded in determining SSI eligibility. 42 U.S.C.

§ 1382b(a)(3). Thus, the narrower terms of the claims manual are entirely consistent with the express language of the statute.

Moreover, the Secretary's construction of resource-dependence is entitled to great deference. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Her construction was not so "plainly erroneous" as to warrant reversal. *See United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977).

4. Defendants shall immediately reinstate plaintiff to the SSI program under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* and shall restore to her all SSI benefits that have accrued since the date of her unlawful termination.

5. Section 12605 of the SSI Claims Manual of the SSA is hereby declared void. Defendants, their agents, employees, and successors, are hereby permanently enjoined from enforcing § 12605 in determining plaintiff's eligibility for SSI benefits.

6. Plaintiff shall prepare and submit to the Court by November 14, 1983, a judgment approved as to form by defendants.